HASBRO INDUSTRIES, INC., Plaintiffs-Appellants,

v.

M/S "ST. CONSTANTINE," et al., Defendants,

v.

A/S GARONNE–GLITTRE, et al., Plaintiffs in Intervention-Appellees-Cross-Appellants.

Nos. 81–4660, 81–4644 and 82–4006.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 20, 1982.

Decided Feb. 8, 1983.

As Amended May 4, 1983.

340

George W. Ashford, Jr., Burke, Ashford,
Sakai, McPheeters, Bordner & Gilardy,
Honolulu, Hawaii, James H. Simonson, Big-
ham, Englar, Jones & Houtson, New York
City, for Hasbro Industries, Inc.

William L. Fleming, Cades, Schutte,
Fleming & Wright, Honolulu, Hawaii, M.E.
DeOrchis, Haight, Gardner, Poor & Havens,
New York City, for A/S Garonne-Glittre, et
al.

Before CANBY, NORRIS and REIN-HARDT, Circuit Judges.

PER CURIAM:

Appellants Hasbro Industries, Inc., and A.A. Importing, Inc., were owners or underwriters of cargo destroyed when a fire broke out aboard the M/S St. Constantine, a cargo ship owned by the St. Constantine Maritime Co., Ltd. Appellants filed claims in a limitation proceeding brought by the vessel under the Limitation of Liability Act, 46 U.S.C. §§ 190–195 (1976). The claims were based upon the carriage of Goods by Sea Act (COGSA), 46 U.S.C. §§ 1300–1315 (1976). The district court found that the fire started when a lube oil line valve fractured due to excessive engine vibration and the absence of a necessary pipe support bracket, causing oil to spill onto the hot exhaust manifold and ignite. The crew was unable to extinguish the blaze because of inadequate training in firefighting techniques. The court concluded that the shipowner had notice of the defects and lack of training and was therefore liable because it failed to exercise due diligence to ensure that the vessel was seaworthy and that the crew was properly trained. The shipowner has not appealed.

Appellees A/S Garonne-Glittre and Barber Lines A/S intervened as plaintiffs in the proceedings below. Appellees were time charterers and subcharterers, respectively, of the vessel, with whom appellants had contracted for the transport of their goods. Appellants cross-claimed against appellee-charterers, alleging that the charterers were also liable because their duty to exercise due diligence was identical to the duty owed by a shipowner under COGSA, so that a breach of that duty by the shipowner was necessarily a breach by the charterers. The district court disagreed, finding that the charterers were absolved from liability because they had acted with the due diligence expected of reasonably prudent time charterers. We affirm.

Under COGSA, both shipowners and charterers who enter into a contract for carriage of goods are considered "carriers." 46 U.S.C. § 1301(a). As such, shipowners and charterers must exercise due diligence to make the vessel seaworthy and to properly man, equip, and supply the ship. 46 U.S.C. § 1303(1), (2). If a carrier exercises due diligence, then the carrier will be exonerated from liability for loss due to fire unless caused by the carrier's "actual fault or privity." 46 U.S.C. § 1304(2)(b). Thus, the overriding obligation under COGSA is the duty to exercise due diligence. *Sunkist Growers Inc. v. Adelaide Shipping Lines,* 603 F.2d 1327, 1338 (9th Cir.1979), *cert. denied,* 444 U.S. 1012, 100 S.Ct. 659, 62 L.Ed.2d 640 (1980).

Appellants claim that the question whether due diligence has been exercised is a question of law reviewable *de novo* on appeal. On the contrary, this circuit has repeatedly held that due diligence is essentially a negligence concept and that determinations of negligence in admiralty cases are findings of fact which will be given application unless clearly erroneous. *Waterman Steamship Corp. v. Gay Cottons,* 414 F.2d 724, 735 n. 27 (9th Cir.1969); *Rederi A/B Soya v. SS Grand Grace,* 369 F.2d 159, 163 (9th Cir.1966). Of course, it is true that the question of what standard should be applied in determining due diligence is a question of law. *Id.* We find, however, that the district court applied the correct standard here. To hold otherwise would impose liability on time charterers for unseaworthiness resulting from the shipowner's lack of due diligence, regardless of whether the charterer acted reasonably and prudently. As we stated in *Sunkist,* "[I]f the carrier used due diligence, the unseaworthiness would be excusable." 603 F.2d at 1335 (emphasis omitted). Thus, where the charterers exercised due diligence but the shipowner did not, only the shipowner will be held liable, and the unseaworthiness is excusable with respect to the charterers.

Appellants' basic assertion is that the shipowner's duty of due diligence is identical to the charterer's, with the result that

whenever the one breaches its duty the other is liable vicariously. In support of this proposition, appellants cite section 1301(a) of the Act and *Sunkist.*

First, section 1301(a) serves only to include both shipowners and charterers within the definition of "carrier." While both owe a duty of due diligence as a matter of law, 46 U.S.C. § 1304(1), the question whether particular circumstances amount to a breach is one of fact, the determination of which will vary with the circumstances. *See Waterman Steamship Corp.,* 414 F.2d at 735 n.27. Since liability for loss by fire may be imposed only where there is "actual fault," 46 U.S.C. § 1304(2)(b), a breach is necessarily personal to the "carrier" that is responsible for the harm. Thus, it is perfectly comprehensible that in some cases a shipowner may be liable when a charterer is not. Nothing in the statute suggests otherwise.

Second, the *Sunkist* case deals primarily with allocation of the burden of proof in COGSA cases, and with the trial court's error in shifting the burden to the cargo claimants once the carrier had made an initial showing. *See* 603 F.2d at 1331, 1341. Because the court used the plural in referring to the potential liability of "appellees," meaning both shipowner and charterer, appellants maintain that both must be liable in *every* case. This overlooks the *Sunkist* court's statement that the "obligation to exercise due diligence . . . [applies] to the owners *or* charterers *personally.*" *Id.* at 1341 (emphasis supplied). *Sunkist* does not require that the liability of one "carrier" must be imputed to all others. On the contrary, a district court must consider evidence of the extent and nature of the acts, omissions, and knowledge of the shipowner and charterer separately—just as the trial court did here. While this may sometimes lead to joint liability, it need not in every case.

The district court found that the shipowner, through its managerial employees, knew of the excessive vibration from a 1970 inspection report and from the pur-

chase and replacement of an unusually high number of "holding down" bolts within the two years prior to the fire, but it failed to investigate the cause or effects of the engine vibration. The vessel owner also failed to take reasonable steps to ensure adequate training through periodic drills or formal instruction to all crew members on firefighting techniques. In addition, the shipowner knew that a pipe support bracket should have been attached to the lube oil pipe, and a reasonable inspection would have disclosed that the bracket was missing. This negligent conduct by the shipowner's supervisory or managing employees constituted a failure by the shipowner to exercise due diligence. *See Sunkist,* 603 F.2d at 1136.

The same cannot be said of the charterers. They were not privy to the knowledge held by the vessel owner and its managing employees. Nor were they in control of maintenance and repairs; under the terms of the charter party the shipowner was solely responsible for maintenance. There is no evidence that the charterers knew about the 1970 report, the increasing and unusual number of broken "holding down" bolts in the two years prior to the fire, or the failure to train the crew adequately in firefighting techniques. Even if the inspections mandated within the charter party revealed that there had once been a bracket on the pipe, there would have been insufficient reason for the charterers to conclude that the condition of the engine was unsafe.

Moreover, the charterers proffered affirmative evidence to show that they exercised due diligence, and the district court found that they thereby sustained their burden of proof. We cannot say that that finding is clearly erroneous. *Waterman Steamship Corp., supra.* The charterers mandated within the charter party (1) that the vessel and crew be classified in the highest classification society; (2) that the vessel comply with all applicable provisions of the Safety of Life at Sea Convention (SOLAS); and (3) that numerous on-line and class survey inspections be performed

as a prerequisite to their continued use of the St. Constantine. Under these circumstances the charterers did all that could be expected of diligent time charterers.

As the district judge noted during trial:

[T]he charterer [would be] responsible if the ship were unseaworthy and the fire was caused by that which should have been clearly apparent to the charterer.

But we do not have that situation here. We have the charterer endeavoring through the surveys to keep the ship a seaworthy vessel. We also have the charterer before any charter was entered into having first acquainted itself of the quality of the ship; that the ship, insofar as construction was concerned and its ... condition at the time of the charter, was a ship that the charterer felt was seaworthy in every respect and fully able of taking care of the cargo of the charterer's clients.

Since we affirm the district court's conclusion that the charterers are not liable for the damage caused by the fire, we need not consider the issue presented in the cross-appeal, i.e., whether the COGSA limitation of liability applies to charterers.

Finally, we must address the question whether appellants' separate appeal was timely. The district court entered final judgment in this case on October 31, 1981. In addition to awarding damages against the shipowner and absolving charterers from liability, the court allowed the appellants prejudgment interest—but only at the rate permitted under Hawaii law. Appellants filed their notice of appeal on November 30, 1981. They made no challenge at that time to the rate of interest fixed by the district court. It was not until December 24, 1981, in a separate appeal, that appellants raised that issue. Although this separate appeal was well beyond the 30-day period within which an appeal must be filed, Fed.R.App.P. 4(a)(1), appellants contend that the appeal period did not begin to run until appellees filed their cross-appeal on December 10, 1981. No authority is offered for the notion that a cross-appeal somehow enlarges the time for appeal in this way, and we have found none. Appellants were required to file their appeal on all issues of which they wished review within 30 days of entry of the district court's final judgment on October 31. With respect to the issue of prejudgment interest, they failed to do so and therefore the separate appeal is time barred by Rule 4(a)(1).

AFFIRMED.