872 F.2d 1416
 13 Fed.R.Serv.3d 1455
 Lynda KRUSO, Gloria Yokubaitis, Kathy E. Acquistapace,
Christine M. Forakis, et al.,
Plaintiffs-Counterdefendants-Appellants,
v.
INTERNATIONAL TELEPHONE & TELEGRAPH CORP., ITT Commercial
Finance Corp., ITT Industrial Credit Co., a
corporation, ITT Business
Communications, et al.,
Defendants-
Counterplaintiffs-
Appellees.
 No. 86-6670.
 United States Court of Appeals,
Ninth Circuit.
 Submitted March 9, 1989*.
Decided April 19, 1989.
As Amended on Denial of Rehearing June 26, 1989.
Decided April 19, 1989.
 
 Bruce A. Friedman, Los Angeles, Cal., for plaintiffs-counterdefendants-appellants.
 Robert F. Scoular, Martin J. Foley, and Hillary Arrow Booth, Bryan, Cave, McPheeters & McRoberts, Los Angeles, Cal., for defendants-counterplaintiffs-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before FLETCHER, PREGERSON and LEAVY, Circuit Judges.
 PREGERSON, Circuit Judge:
 
 I. BACKGROUND
 
 1
 On March 11, 1986 plaintiff-appellants (hereinafter "plaintiffs") filed a complaint in state court alleging that defendant-appellees (hereinafter "defendants"), including ITT Corp., ITT Commercial Finance Corp., and individuals alleged to be their agents, had injured plaintiffs by means of fraud, intentional interference with business relationship, wrongful termination of business relationship, and breach of implied covenant of good faith and fair dealing. The complaint stemmed from a series of transactions in which International American Advertising Corporation d/b/a American Graphics (AG) and U.S. Teletypeset Corporation (TEL) (hereinafter, AG and TEL will be referred to collectively as "AG") had attempted to establish a computerized typesetting business. AG sold "packages" of computer hardware, software, and training to "owner-operator" customers to set up their own typesetting business. Some of the customers individually applied to ITT Commercial Finance Corp. for acquisition financing. ITT Commercial Finance Corp. also provided AG with wholesale financing for acquisition of an inventory of computers for sale to prospective customers.
 
 
 2
 In their complaint, plaintiffs (owner-operators, shareholders of AG and "employees") alleged that defendants had failed to satisfy their obligation to supply plaintiffs with personal computers and financing. Plaintiffs alleged that defendants had promised to provide financing for the sale of the "package" to members of the public for a period of at least two years, and then broke this promise. Plaintiffs also alleged that defendants had made and broken a promise to provide AG with a continuous supply of ITT personal computers for at least two years. According to plaintiffs, defendants broke these promises when defendants Tom Green and Barbara Bookwalter suddenly, and without any justification, ordered all of AG's inventory removed from its warehouse and refused to provide AG with any further financing. As a result, plaintiffs allege, AG was forced out of business and the owner-operators were left with a useless package of computer products.
 
 
 3
 Defendants describe the events leading to the lawsuit rather differently. In their version, there was no agreement between defendants and plaintiffs that financing would be available for any set period of time. According to defendants, AG promised the owner-operators to whom it sold the computer package that it would assist them in setting up their own typesetting businesses, and guaranteed to provide them with business. Defendants maintain that AG also promised to provide the owner-operators with phototypesetting services. Defendants contend that AG failed to provide the owner-operators with the business it had guaranteed, and as a result some of the owner-operators stopped paying their equipment leases with ITT Commercial Finance Corp. At the same time, say defendants, AG bounced checks to ITT Commercial Finance Corp. and removed ITT's equipment from a bonded warehouse without paying for it. After learning of this and discovering that AG lacked sufficient funds in the bank to pay for the removed equipment and had not paid the salaries of the bonded warehouseman and its own employees or the fees of the bonded warehouse company, ITT Commercial Finance Corp. exercised its reserved right to provide no further wholesale financing to AG and requested payment for its equipment. AG, according to defendants, refused to pay its indebtedness to ITT Commercial Finance Corp. Defendants contend that plaintiff Broyles, a shareholder in AG, changed the locks on the bonded warehouse, locking out the bonded warehouseman and ITT Commercial Finance Corp. AG, however, subsequently agreed to return ITT Commercial Finance Corp's equipment to it voluntarily, and, according to defendants, did so. At this point, defendants say, AG still owed ITT Commercial Finance Corp. over $1 million. When ITT requested payment, plaintiffs, who included a number of owner-operators and shareholders in AG, brought this lawsuit.
 
 
 4
 AG was not a plaintiff in the lawsuit filed in state court on March 11, 1986. Instead, a group of shareholders in AG, referred to by plaintiffs as the "Teletypeset plaintiffs," together with some of the owner-operators ("Owner-operator plaintiffs") and employees either of the Teletypeset plaintiffs (according to plaintiffs) or AG (according to defendants) ("Employee plaintiffs") brought the action. All of the 156 plaintiffs were California residents. As defendants, plaintiffs named ITT Corporation, ITT Commercial Finance Corp., a number of other ITT entities, nine individual named defendants, and "Does 1 through 50." Among the nine named defendants were Tom Green and Barbara Bookwalter, residents of California. All of the other defendants (aside from the Does) were citizens of states other than California. Plaintiffs have never specified the identity or state of residence of any of the Doe defendants.
 
 
 5
 On April 10, 1986 defendants filed a Verified Petition for Removal.[1] In their petition they argued, first, that there was complete diversity between the parties notwithstanding the California residence of Green and Bookwalter because those two persons had been joined "fraudulently and improperly" by plaintiffs for the sole purpose of attempting to avoid removal of the case to federal court. According to defendants, plaintiffs had failed to state, and could not state, a claim against Green and Bookwalter upon which relief could be granted.[2] Second, defendants argued that "Does 1 through 50" were "merely formal and phantom parties.... [T]he allegations with respect to them are sham and cannot affect the jurisdiction of [the district] Court or defeat the removal of this action to [the district] Court."
 
 
 6
 After the case was removed to the district court, plaintiffs moved to remand it back to state court under 28 U.S.C. Sec. 1447(c).[3] In their motion plaintiffs argued that the case had been improvidently removed because "diversity of citizenship does not exist as two of the defendants [Bookwalter and Green] are citizens of the State of California." Plaintiffs did not deny defendants' averment that the Doe defendants were "shams."
 
 
 7
 After a hearing, the district court denied plaintiffs' motion for remand in an order dated April 23, 1986. The order denied plaintiffs' application for remand, and then dismissed plaintiffs' complaint against Bookwalter and Green because "[t]he joinder of defendants Barbara Bookwalter and Tom Green [has] been found to have been not justified on the face of the pleadings."[4] The order went on to invite plaintiffs to file a motion for reconsideration or an amended complaint, or both.
 
 
 8
 On April 29, 1986 plaintiffs filed a motion for reconsideration of the order denying their motion to remand, to which they attached as an exhibit a "Proposed First Amended Complaint" which, they said, they planned to file in state court if the case was remanded. According to plaintiffs, they did not file this Proposed First Amended Complaint with the district court because they did not want to "concede jurisdiction of the federal court...." Appellants' Opening Brief at 3. The Proposed First Amended Complaint listed Does 1 through 50 among the defendants.
 
 
 9
 On June 3, 1986 the district court denied the motion for reconsideration. The court stated:
 
 
 10
 The Court finds no basis for reconsidering its prior ruling that the conclusory allegations in the original complaint were insufficient to sustain the joinder of the individual defendants, and that therefore diversity jurisdiction exists in this case.
 
 
 11
 The district court refused to certify its ruling on the motion for remand for interlocutory review, and further refused to certify it as a final judgment under Rule 54(b) of the Federal Rules of Civil Procedure.
 
 
 12
 Plaintiffs nonetheless sought review of the order denying remand in this court. They also sought an emergency stay of proceedings in the district court. This court dismissed the attempted appeal for lack of jurisdiction and denied the emergency motion.
 
 
 13
 After defendants had filed motions to dismiss and for summary judgment, the district court on August 15, 1986 dismissed plaintiffs' complaint pursuant to Rules 37(b) and (d) and 41(b) of the Federal Rules of Civil Procedure. The court also entered default against plaintiffs on ITT Commercial Finance Corp.'s counterclaims. On October 16, 1986 the district court entered separate orders dismissing the complaint on grounds independent of the August 15 dismissal. The court granted defendants' motions to dismiss and for summary judgment. The court also entered judgment for ITT Commercial Finance Corp. on its counterclaims. Finally, the court entered a finding that plaintiffs had violated Rule 11 of the Federal Rules of Civil Procedure because their complaint "was not well grounded in fact and was not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law."[5]
 
 
 14
 On November 10, 1986, plaintiffs filed their notice of appeal, which stated: "Plaintiffs and Appellants hereby appeal to the United States Court of Appeals for the Ninth Circuit all judgments and Orders entered in this case on October 16, 1986."
 
 
 15
 In this appeal, plaintiffs argue, first, that the presence of the Doe defendants destroys diversity of citizenship and requires that the panel order the case remanded to state court. Second, they argue that Tom Green and Barbara Bookwalter were properly named as defendants and, as citizens of California, also destroy diversity of citizenship. Plaintiffs thus ask this court to reverse the district court's judgments on the ground that it lacked jurisdiction over the case.
 
 
 16
 Defendants, in response, argue, first, that this court lacks jurisdiction over the issues plaintiffs seek to raise, because plaintiffs did not, in their notice of appeal, state that they were appealing from the district court's April 23, 1986 order denying plaintiffs' motion for remand and dismissing defendants Bookwalter and Green. Second, defendants argue that even if this court has jurisdiction over the issues plaintiffs raise, the court should affirm the district court's holding that diversity of citizenship justifying removal existed, because Bookwalter, Green and the Doe defendants were fraudulently joined and because Congress has recently enacted a statute which directs federal courts to disregard "Doe" defendants for purposes of removal.
 
 II. STANDARD OF REVIEW
 
 17
 In reviewing decisions of the district court, the court of appeals may affirm on any ground finding support in the record. Smith v. Block, 784 F.2d 993, 996 n. 4 (9th Cir.1986).
 
 
 18
 "An involuntary dismissal pursuant to Fed.R.Civ.P. 41(b) is viewed as 'a judgment in defendant's favor following a trial to the court.' " Great American Houseboat Co. v. United States, 780 F.2d 741, 746 (9th Cir.1986) (quoting Thorne v. City of El Segundo, 726 F.2d 459, 468 (9th Cir.1983), cert. denied, 469 U.S. 979, 105 S.Ct. 380, 83 L.Ed.2d 315 (1984)). Findings of fact are reviewed under the clearly erroneous standard; questions of law are reviewed de novo. Id.
 
 
 19
 A grant of summary judgment is reviewed de novo. Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir.1986).
 
 
 20
 A dismissal for failure to state a claim pursuant to Fed.R.Civ.P. 12 is a ruling on a question of law and as such is reviewed de novo. Fort Vancouver Plywood Co. v. United States, 747 F.2d 547, 552 (9th Cir.1984). Review is limited to the contents of the complaint. Id.
 
 
 21
 The existence of subject matter jurisdiction presents a question of law reviewed de novo by the court of appeals. Peter Starr Production Co. v. Twin Continental Films, Inc., 783 F.2d 1440, 1442 (9th Cir.1986). A district court's factual findings on jurisdictional issues must be accepted unless they are clearly erroneous. Bruce v. United States, 759 F.2d 755, 758 (9th Cir.1985).
 
 
 22
 Removal of a case from state to federal court is a question of federal subject matter jurisdiction which is reviewed de novo. Williams v. Caterpillar Tractor Co., 786 F.2d 928, 930 (9th Cir.1986), aff'd, 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987).
 
 III. DISCUSSION
 
 23
 A. This Court's Jurisdiction: The Notice of Appeal
 
 
 24
 Defendants argue that because plaintiffs' notice of appeal refers only to the district court's orders of October 16, 1986, which dismissed plaintiffs' action and entered judgment on defendants' counterclaims, plaintiffs are barred from contesting in this appeal the district court's earlier denial of their motion to remand the case to state court.
 
 
 25
 Defendants point to Rule 3(c) of the Federal Rules of Appellate Procedure, which states:
 
 
 26
 Content of the notice of appeal. The notice of appeal shall ... designate the judgment, order or part thereof appealed from....
 
 
 27
 Fed.R.App.P. 3(c). According to defendants, this court lacks jurisdiction over anything not designated in the notice of appeal.
 
 
 28
 As support for this proposition, defendants rely on Hasbro Industries, Inc. v. M/S "St. Constantine", 705 F.2d 339, 343 (9th Cir.), cert. denied, 464 U.S. 1013, 104 S.Ct. 537, 78 L.Ed.2d 717 (1983), in which this court stated that appellants "[are] required to file their appeal on all issues of which they wish[ ] review within 30 days of entry of the district court's final judgment...." Because appellants in that case brought, in addition to a timely appeal, a separate appeal after the 30-day limit imposed by Rule 4(a)(1) of the Federal Rules of Appellate Procedure, the Hasbro court refused to consider the issues raised in the latter appeal along with the issues raised in appellants' timely appeal. Defendants argue that Hasbro applies to this case, and dictates that if an order is omitted from the notice of appeal, appeal has not been preserved of the issues the order raises.
 
 
 29
 Hasbro, however, can be distinguished from the present case on at least two grounds. First, Hasbro does not discuss the notice of appeal and what it must contain in order to raise an issue for appellate review. Rather, the issue in Hasbro was whether the 30-day period for appeal ran from the time the district court entered judgment, or from the time appellees filed their cross-appeal. 705 F.2d at 343. The court held that the filing of a cross-appeal does not enlarge the time for appeal. Id.
 
 
 30
 Second, in Hasbro the appellants apparently did not intend to raise in their original appeal the issue (prejudgment interest) they later attempted to raise. By contrast, in the present case appellants' counsel apparently believed that he was raising the removal issue in his notice of appeal.
 
 
 31
 Defendants also cite Cole v. Tuttle, 540 F.2d 206 (5th Cir.1976), to support their position. In Cole, the Fifth Circuit held that appellants could not appeal the district court's 1973 order dismissing two defendants from the action because appellants' 1975 notices of appeal did not mention the 1973 order. As in the present case, the 1973 order in Cole was not an appealable order until the litigation ended, in 1975 in Cole. Id. at 207. In November of 1975, appellants filed two notices of appeal, both of which referred to the district court's orders of October 1975, which denied appellants' request for injunctive relief and refused to grant them attorney fees. Id. The Cole court refused to review the district court's 1973 order, stating that "appellants never gave notice that they were appealing the ... 1973 dismissal." Id. The Fifth Circuit appeared to rest its holding in part on the lack of notice to the two previously dismissed defendants whose dismissal appellants were seeking to appeal. The court stated: "The sole notices given to anyone specified that the appeal was from other orders only, entered long after these [two defendants] had departed the case." Id. The court concluded its discussion, however, by citing Rule 3(c)'s requirement that a notice of appeal designate the "judgment, order or part thereof appealed from," thus ultimately resting its holding on an interpretation of the rule barring review of any order not specifically mentioned in the notice of appeal. Id.
 
 
 32
 Notwithstanding Hasbro and Cole, a number of this court's opinions clearly refute defendant's argument that appellants must name in their notice of appeal any order issued prior to a final judgment of which they desire appellate review. In Lynn v. Sheet Metal Workers' Int'l Ass'n, 804 F.2d 1472 (9th Cir.1986), aff'd, --- U.S. ----, 109 S.Ct. 639, 102 L.Ed.2d 700 (1989), we stated:
 
 
 33
 While some circuits construe Rule 3(c) strictly, see. e.g., Pitney Bowes, Inc. v. Mestre, 701 F.2d 1365, 1373-75 (11th Cir.), cert. denied, 464 U.S. 893, 104 S.Ct. 239, 78 L.Ed.2d 230 (1983) (court will hear appeal of summary judgment, but not appeal of order to vacate injunction); C.A. May Marine Supply Co. v. Brunswick Corp., 649 F.2d 1049, 1055-56 (5th Cir.), cert. denied, 454 U.S. 1125, 102 S.Ct. 974, 71 L.Ed.2d 112 (1981) (court will consider only denial of motion for new trial and not denial of request for attorney's fees), this circuit has held that "a mistake in designating the judgment appealed from should not bar appeal so long as the intent to appeal a specific judgment can be fairly inferred and the appellee is not prejudiced by the mistake." United States v. One 1977 Mercedes Benz, 708 F.2d 444 (9th Cir.1983), cert. denied, 464 U.S. 1071, 104 S.Ct. 981, 79 L.Ed.2d 217 (1984); see also Munoz v. Small Business Administration, 644 F.2d 1361, 1364 (9th Cir.1981); United States v. Walker, 601 F.2d 1051, 1057-58 (9th Cir.1979). In determining whether "intent" and "prejudice" are present, we apply a two-part test: first, whether the affected party had notice of the issue on appeal; and, second, whether the affected party had an opportunity to fully brief the issue.
 
 
 34
 Id. at 1481. See also Pope v. Savings Bank of Puget Sound, 850 F.2d 1345, 1347 (9th Cir.1988); Garrett v. City and County of San Francisco, 818 F.2d 1515, 1516 n. 1 (9th Cir.1987).
 
 
 35
 In the present case, plaintiffs mistakenly designated the district court's orders of October 16, 1986 as the orders appealed from.[6] It is clear, however, that defendants had "notice of the issue[s] on appeal" and "an opportunity to fully brief the issue[s]." Lynn, 804 F.2d at 1481. Defendants were fully aware that plaintiffs intended to argue that the district court had erred in denying their motion to remand; defendants knew that plaintiffs would contend that the naming of Bookwalter and Green and the "Doe" defendants defeated diversity jurisdiction and thus precluded removal. Defendants' appellate brief, moreover, thoroughly presents defendants' position on these issues. Thus defendants' contention that this court lacks jurisdiction to review the district court's denial of plaintiffs' remand motion is without merit.[7]
 
 B. Removal
 
 36
 (1) The "Doe" Defendants
 
 
 37
 (a) Bryant v. Ford Motor
 
 
 38
 Plaintiffs contend that the naming of "Doe" defendants in their complaint destroyed diversity of citizenship and deprived the district court of jurisdiction to hear the case. They argue that the district court should therefore have granted their motion to remand the case to state court.
 
 
 39
 Plaintiffs rely on this court's opinion in Bryant v. Ford Motor Co., 844 F.2d 602 (9th Cir.1987) (as amended April 15, 1988) (en banc), cert. vacated, --- U.S. ----, 109 S.Ct. 542, 102 L.Ed.2d 572 (1988). In Bryant, we held that "the presence of Doe defendants under California Doe defendant law destroys diversity and, thus, precludes removal." Id. at 605. We stated that under the new rule "district courts will no longer have to make the near-impossible determination of when allegations against Doe defendants are 'specific' enough to defeat diversity." Id. "Instead, the 30-day limit for removal contained in 28 U.S.C. Sec. 1446(b) will not commence until all Doe defendants are either named, unequivocally abandoned by the plaintiff, or dismissed by the state court." Id. (footnote omitted). We specified that our holding was to apply retroactively, requiring federal courts to remand pending cases containing allegations against unnamed Doe defendants to state court "unless both parties agree to dismiss the Doe defendants." Id. at 606 n. 7. Plaintiffs argue that under Bryant we must remand this case, which was pending when Bryant was decided, because plaintiffs had alleged tortious acts carried out by Doe defendants, and because the Doe defendants had been neither named, abandoned, nor dismissed by the district court.
 
 
 40
 Defendants, in response, argue that Bryant does not govern this case.[8] They point out that following Bryant, this court created two exceptions to the rule that the presence of Doe defendants precludes removal. In Brandchaft v. E.F. Hutton & Co., 841 F.2d 886 (9th Cir.1988), we decided that "Bryant does not require remand in cases where 'Doe' defendants were stricken by the district court prior to the November 6, 1987 decision in Bryant." In Johnson v. Mutual Benefit Life Ins. Co., 847 F.2d 600, 602 (9th Cir.1988), we extended Brandchaft to cover cases in which the district court ruled that the Doe defendants were shams before Bryant was decided. See also Bogan v. Keene Corp., 852 F.2d 1238, 1240 (9th Cir.1988) ("[t]he district court declared that the Doe defendants ... were shams before Bryant ... was decided."). Thus a finding that the Doe defendants were shams precludes the necessity for remand. See id.
 
 
 41
 Defendants argue that this latter exception to Bryant defeats plaintiffs' contention that the presence of Doe defendants in their complaint defeats diversity. Defendants however are unable to point to any order or statement by the district court which amounts to a finding that the Does named by plaintiffs were fraudulently joined, or which specifically dismisses the Doe defendants.[9] Defendants merely argue that the district court must have agreed with defendants because it denied plaintiffs' motion to remand.[10]
 
 
 42
 (b) Section 1016(a)
 
 
 43
 On November 19, 1988, while this case was pending before this court, the President signed into law the Judicial Improvements and Access to Justice Act of 1988. Section 1016(a) of Title X of this Act amends 28 U.S.C. section 1441(a), supra note 2, by adding the following sentence:
 
 
 44
 For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.
 
 
 45
 Pub.L. 100-702, Sec. 1016(a), 102 Stat. 4642, 4669 (1988). Under section 1016(a), the naming of Doe defendants no longer defeats diversity jurisdiction.
 
 
 46
 Congress, however, did not specify an "effective date" for section 1016(a). The question whether Congress intended the provision to have retroactive application is one of first impression in this circuit. Because section 1016(a) was enacted after plaintiffs filed their notice of appeal, we must decide whether it applies retroactively in this case.
 
 
 47
 In In re Rubin, 769 F.2d 611 (9th Cir.1985), we stated:
 
 
 48
 Absent manifest injustice or congressional intent to the contrary, we generally apply the law as it exists when we render our decision.... This rule applies to changes in the law that affect jurisdiction.
 
 
 49
 Id. at 614 (citing Bradley v. Richmond School Board, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974); In re Reynolds, 726 F.2d 1420 (9th Cir.1984); Andrus v. Charlestone Stone Products Co., 436 U.S. 604, 608 n. 6, 98 S.Ct. 2002, 2005 n. 6, 56 L.Ed.2d 570 (1978); Carlton v. Baww, Inc., 751 F.2d 781, 787 & n. 6 (5th Cir.1885)).[11] Applying section 1016(a) retroactively will not create a "manifest injustice." Nor is there clear "congressional intent to the contrary," given the omission of an "effective date" or any reference to retroactivity in the legislative history. See Congressional Record, S 16308 (October 14, 1988). There thus appears to be no reason not to apply section 1016(a) to this case.
 
 
 50
 Plaintiffs, however, argue that because portions of the Judicial Improvements and Access to Justice Act other than section 1016(a) contain "effective dates" which would render them inapplicable to this case, Congress must have intended section 1016(a) to have a similar effective date, and to apply only to actions commenced in, or removed to, a district court 180 days after the Act's enactment. This contention is not persuasive. The absence of any specific reference to effective date in section 1016(a), together with such references in other provisions, could just as easily be interpreted to mean that Congress intended section 1016(a) to take effect immediately. Clearly Congress knew how to specify an effective date other than the date of enactment when it wished to do so.
 
 
 51
 In Friel v. Cessna Aircraft Co., 751 F.2d 1037 (9th Cir.1985), this court discussed the considerations involved in deciding whether a statute should be given retrospective application. A statute should receive only prospective effect, the court said, when necessary to " 'prevent[ ] the assigning of a quality or effect to acts or conduct which they did not have or did not contemplate when they were performed.' " Id. at 1039 (citing Union Pacific R.R. Co. v. Laramie Stock Yards Co., 231 U.S. 190, 199, 34 S.Ct. 101, 102, 58 L.Ed. 179 (1913)). Here, giving section 1016(a) retrospective effect will not assign a quality or effect to any act which it lacked when performed. Retrospective application of section 1016(a) does not alter the way in which a court would view any of the transactions which are the subject of the lawsuit. "No conduct on the part of either party would have differed if the statute had been in effect at the time of [these transactions]." Id. The court in Friel also stated that "when a statute is addressed to remedies or procedures and does not otherwise alter substantive rights, it will be applied to pending cases." Id. (citations omitted). In the instant case, section 1016(a) is a procedural enactment which does not alter substantive rights. Therefore, the considerations militating against retrospective application are not present in this case.
 
 
 52
 We hold, therefore, that section 1016(a) took effect upon passage and applies to cases pending on that date. As a result, the presence of Doe defendants in plaintiffs' complaint neither defeated diversity jurisdiction nor required that the case be remanded to state court.
 
 
 53
 (2) Bookwalter and Green
 
 
 54
 The district court's determination that defendants Bookwalter and Green were improperly joined rested on the court's conclusion that "none of the individual defendants are alleged to have done anything wrongful except to cause the corporate defendants to act in an allegedly wrongful manner. The alleged wrongs of which plaintiffs complain are all corporate wrongs. Plaintiffs do not and apparently cannot allege that any of the individual defendants owed them any duty in their individual capacity, nor that they did any act in their individual capacity which violated any such duty or otherwise caused plaintiffs harm except as a result of corporate acts."
 
 
 55
 Plaintiffs take issue with the district court's finding that the complaint[12] states no claims against Bookwalter or Green in their individual capacities. Plaintiffs assert that Bookwalter and Green are liable to plaintiffs as agents of the corporate defendants in carrying out actions which were "tortious in nature." Under California law, an agent may be liable to a third party if in the course of his agency he commits acts which are "wrongful in their nature." Cal.Civ.Code Sec. 2343. Plaintiffs argue that Bookwalter and Green tortiously removed the inventory from plaintiffs' warehouse. The allegation in their complaint concerning the removal of inventory states that "defendants and each of them, suddenly, without warning and without any legal justification whatsoever, refused to provide any further financing for purchases of said [typesetting] package, removed all of their computers from the inventory of the Teletypeset plaintiffs, and interfered with, and totally prevented, the sale by the Teletypeset plaintiffs of any further packages."[13] This allegation, according to plaintiffs, is sufficient to join Bookwalter and Green as defendants. Because Bookwalter and Green are California citizens, plaintiffs maintain, their joinder defeated diversity jurisdiction, and the district court should have remanded the action to state court.
 
 
 56
 In response, defendants argue that Bookwalter and Green were fraudulently joined because, first, plaintiffs' complaint does not state a cause of action against these defendants and, second, plaintiffs are unable to state any cause of action against them. This purported inability to state a claim against Bookwalter and Green, in turn, results from what defendants contend is plaintiffs' lack of standing. According to defendants, the agreements which plaintiffs allege defendants fraudulently induced, interfered with, and wrongfully terminated were entered into not by the Teletypeset plaintiffs or any other named plaintiffs but rather by American Graphics (AG), which is not a plaintiff in this action. Because the Teletypeset plaintiffs are merely shareholders of AG, and because none of the plaintiffs were parties to any of the alleged agreements, they have no standing, defendants argue, to sue for fraudulent inducement, interference with, or wrongful termination of business relationship. Moreover, because the inventory allegedly taken by Bookwalter and Green was in AG's possession at the time of its removal, plaintiffs lack standing to sue Bookwalter and Green for any injury arising out of that incident.
 
 
 57
 Defendants are correct that plaintiffs cannot prevail on any claims they seek to bring against the defendants, including Bookwalter and Green, because plaintiffs were not parties to the alleged agreements. Plaintiffs have conceded that they were not parties to the relevant transactions. In their opening brief, plaintiffs state:
 
 
 58
 Prior to January 1, 1985, the named corporate defendants, with the express knowledge and consent of the remaining defendants and each of them, entered into a written and oral arrangement with TEL and AG, wherein TEL and AG were made official dealers authorized to sell ITT products and services to the general public on behalf of all the defendants.
 
 
 59
 The principal operation, which was the subject of said arrangement, consisted of an agreement on the part of said defendants to set up TEL and AG to provide ... financing ... for the sale to the general public of a package of typesetting products and services.
 
 
 60
 Appellants' Opening Brief at 3-4 (emphasis added).
 
 
 61
 Copies of a Dealers Agreement, Purchase Agreement, Security Agreement, and leases all show AG, and none of the named plaintiffs, as a contracting party. Thus it appears that none of the plaintiffs were personally involved in any of the transactions in question. This lack of involvement deprives plaintiffs of standing to sue defendants, for none of the torts plaintiffs allege could have been committed against any entity other than AG. The plaintiffs may have suffered financial losses stemming from their participation in the typesetting venture as shareholders, employees, or customers of AG, but they cannot allege injury to themselves by reason of alleged wrongdoing by defendants in the entering, execution or termination of the underlying agreements to which plaintiffs were not parties. To put it another way, a favorable decision by this court would not help plaintiffs because the torts they allege were committed not against them but against AG, and only AG could recover for such torts.
 
 
 62
 In conclusion, the named plaintiffs are unable to state a claim against defendants for any of the wrongs alleged in their complaint. As a result, defendants Green and Bookwalter were properly dismissed by the district court.
 
 
 63
 AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34-4 and Fed.R.App.P. 34(a)
 
 
 [1]
 28 U.S.C. section 1441 (1982) provides, in relevant part:
 (a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.
 (b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.
 See also infra Part III B(1)(b) (discussing 1988 amendment to 28 U.S.C. section 1441).
 
 
 [2]
 Defendants stated:
 Neither Barbara Bookwalter nor Tom Green made any decision to refuse "to provide any further financing for purchases of said package [of typesetting products and services]" or to remove "all of their [ITT's] computers from the inventory of the Teletypeset plaintiffs" as alleged by plaintiffs in their Complaint (paragraph 30). Neither Barbara Bookwalter nor Tom Green had any involvement in, or responsibility for, the provision of financing for purchases of the package or the termination of such financing; such financing was provided by ITT Commecial Finance Corp. through its Fast Forward Leasing Division (of which neither Barbara Bookwalter nor Tom Green was or is an employee) out of Clayton, Missouri.
 
 
 [3]
 Section 1447(c) states:
 If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case....
 
 
 [4]
 The order was itself submitted as a Proposed Order by defendants, and Judge Letts signed it after making certain alterations in the document. One of these changes was the court's substitution of the phrase "not justified on the face of the pleadings" for the word "fraudulent," which defendants had proposed
 
 
 [5]
 The district court does not appear, however, to have entered a final judgment imposing Rule 11 sanctions upon plaintiffs. In its October 16, 1986 order, the court "expressly deferred decision on, and retained jurisdiction of, the following matters: ... a. The imposition of sanctions on plaintiffs' counsel and plaintiffs pursuant to Fed.R.Civ.P. 11 and 28 U.S.C. Sec. 1927; b. The imposition of sanctions against plaintiffs' counsel and plaintiffs pursuant to Fed.R.Civ.P. 37(a), (b) and (d)...."
 
 
 [6]
 It is possible that plaintiffs' counsel, recalling that the district court had tentatively ruled that there was no appeal as of right from the denial of the motion to remand, believed that he was not required, or not permitted, to mention the order denying remand in his notice of appeal. Alternatively, counsel may have read Rule 3(c) to provide that a notice of appeal may only refer to one "judgment, order or part thereof." Finally, it is possible that plaintiffs' counsel believed, erroneously, that he could not mention the April 23, 1986 order in his notice of appeal because more than 30 days had passed since the date of that order. See Rule 4(a)(1), Federal Rules of Appellate Procedure
 
 
 [7]
 The above discussion also demonstrates the lack of merit in defendants' argument that because plaintiffs did not specifically appeal from the district court's August 15, 1986 order dismissing the case, they may not contest dismissal on appeal
 
 
 [8]
 As discussed in the text, defendants argued in their appellate brief that Bryant was distinguishable from the present case, which was instead governed, they contended, by later Ninth Circuit cases creating exceptions to Bryant. See Part III B(1)(a). While this case was pending, however, Congress enacted a law whose effect was to overrule Bryant. See infra Part III B(1)(b) (discussing 1988 amendment to 28 U.S.C. Sec. 1441). Defendants drew this court's attention to this enactment pursuant to Rule 28(j) of the Federal Rules of Appellate Procedure. Defendants thus ultimately base their contention that the district court correctly refused to remand the case on two grounds: first, that Bryant is distinguishable and, second, that the 1988 amendment to 28 U.S.C. Sec. 1441 has retrospective application and thus governs this case. We address both of these issues
 
 
 [9]
 Defendants cite the district court's April 23, 1986 order for the proposition that "the joinder of Doe defendants had been challenged and adjudicated on the basis of fraudulent joinder...." Brief of Defendants-Appellees at 44. In fact, in its order of April 23, 1986, the district court only dismissed Green and Bookwalter as improperly joined; the court went on to extend "the time for defendants who have not yet appeared to answer or otherwise plead to plaintiffs' complaint...." The district court evidently included the "Does" among this latter group of defendants
 
 
 [10]
 Similarly without merit is defendants' contention that plaintiffs "agreed" to dismiss the Doe defendants by their failure to controvert defendants' allegation that the Does were shams, and defendants' argument that plaintiffs for the same reason "abandoned" the Does. Brief of Defendants-Appellees at 49. As the Bryant court made clear, "abandonment occurs only in two situations: (1) where the plaintiff drops the Doe defendants from the complaint or (2) where the trial commences without service of the Doe defendants." Bryant, 844 F.2d at 606 n. 5
 
 
 [11]
 The Rubin court however concluded that the statutory change at issue, an amendment of the Bankruptcy Code, did not impose "jurisdictional requirements" and that therefore the rule stated above did not apply. 769 F.2d at 614. In the present case, however, section 1016(a) is "jurisdictional," because it concerns "a court's competence to hear and determine cases of the general class to which the proceedings in question belong and the power to deal with the general subject involved in the action." Id
 
 
 [12]
 In making its findings the district court evidently tly refused to consider the allegations made in plaintiffs' unfiled "Proposed First Amended Complaint," which plaintiffs had attached as an exhibit to their Motion for Reconsideration. In their briefs on appeal, however, plaintiffs rely on the allegations made in this unfiled "Proposed First Amended Complaint," as well those made in their original complaint, to support their contention that they have stated valid claims against Bookwalter and Green. This court will not consider the allegations contained in the unfiled "Proposed First Amended Complaint." See C. Wright & A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction Sec. 3739, at 580-81 (2d ed. 1985) ("Whether an action should be remanded must be resolved by reference to the complaint at the time the petition for removal was filed."). See also Smith v. City of Picayune, 795 F.2d 482, 485 (5th Cir.1986) ("Generally, the right of removal is determined by the pleadings as they stand when the petition for removal is filed."). Moreover, we see no reason to alter this approach to provide for the contingency that the amended complaint was not filed to avoid "conceding" the jurisdiction of the federal court, as the plaintiffs suggest. It is well settled that federal subject matter jurisdiction, which the plaintiffs seek to avoid, cannot be conferred by consent. See In re Rubin, 769 F.2d 611, 614 n. 3 (9th Cir.1985) ("parties cannot confer subject matter jurisdicition on a federal court by their consent"); see also Sullivan v. First Affiliated Sec., Inc., 813 F.2d 1368, 1374 (9th Cir.1987) (rejecting consent as a basis for federal removal jurisdiction over action filed in state court, where plaintiffs also filed an action in federal court, to which the state action claims could have been joined). We therefore confine our review to the facts alleged in the original complaint
 
 
 [13]
 The complaint also alleges that Bookwalter and Green, along with other defendants, "authorized, ratified and directly made" misrepresentations to plaintiffs concerning the transactions "with the intention on the part of defendants and each of them of thereby depriving the plaintiffs of property or legal rights or otherwise causing injury." Plaintiffs frame the remaining claims against "defendants and each of them" in similar terms