Joseph D. POTTGIESER, as Administrator of the Estate of Cecilia Pottgieser, deceased, and others similarly situated, Plaintiff–Appellee,

v.

Kenneth KIZER, Director of the California Department of Health Services, Defendant–Appellant.

Joseph D. POTTGIESER, as Administrator of the Estate of Cecilia Pottgieser, deceased, and others similarly situated, Plaintiff–Appellee,

v.

Kenneth KIZER, Director of the California Department of Health Services, Defendant,

and

Louis W. Sullivan,* Secretary of Health and Human Services, Defendant–Appellant.

Nos. 88–15762, 89–15052.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 12, 1990.

Decided June 25, 1990.

Edward R. Cohen, Civil Div., U.S. Dept. of Justice, Washington, D.C., and Stephanie Wald and Winifred Y. Smith, Deputy Attys. Gen., San Francisco, Cal., for defendants-appellants.

Brenton Rogozen, Legal Aid Society, San Jose, Cal., for plaintiff-appellee.

Before TANG and BEEZER, Circuit Judges, and STEPHENS,** District Judge.

BEEZER, Circuit Judge:

Officials of the state of California and the federal government appeal a grant of

---

* Louis W. Sullivan, M.D., is substituted for Otis R. Bowen, M.D., as Secretary of Health and Human Services pursuant to Rule 43(c)(1) of the Federal Rules of Appellate Procedure.

** The Honorable Albert Lee Stephens, Jr., United States District Judge for the Central District of California, sitting by designation.

summary judgment in favor of plaintiff in this class action, declaring that the state may not collect from an estate the cost of Medicaid insurance premiums paid on behalf of a decedent. We affirm.

## I

Cecilia Pottgieser was a recipient of Social Security retirement benefits, Supplemental Security Income, hospital insurance benefits, supplemental medical insurance, and Medicaid during her lifetime. Her estate is in probate and Joseph Pottgieser is the administrator.

Under Medicaid, a state may pay providers directly or enroll beneficiaries in the federal supplemental insurance program, paying premiums on their behalf to the federal government. California has chosen to pay premiums, and when Cecilia died in 1986 at age 82, the state had paid $1,104.70 in premiums on her behalf.

Under Medicaid, a state may also recover from the estates of certain deceased recipients the costs it has paid for "medical assistance." Accordingly, after Cecilia died, California filed a creditor's claim for $1,104.70 against her estate.

Pottgieser argues that the recovery statute does not authorize recovery of premiums because they are not "medical assistance." "Medical assistance" is defined as "payment of part or all of the cost of the following care and services," followed by 21 enumerated services. 42 U.S.C. § 1396d(a). Since premiums are not listed, Pottgieser argues, they should not be included in the amount recoverable against an estate.

The state responds that since "medical assistance" is defined as "*payment* of part or all of the cost" of those services, any form of payment may be recovered. In support, it cites the definition of "Federal medical assistance" (the amount the federal government will reimburse the state). That amount is defined as a percentage of "the *total amount expended* ... as medical assistance ... (including ... expenditures for premiums....)". 42 U.S.C. § 1396b(a)(1).

The district court agreed with Pottgieser that the definition of "medical assistance" was unambiguous and did not include premiums, since only specific services are listed. We find the statute to be less straightforward, but its structure, the legislative history and the regulations support the district court's reading.

We have jurisdiction over this timely appeal under 28 U.S.C. § 1291. We review a district court's grant of summary judgment de novo. *Kruso v. International Telephone & Telegraph Corp.*, 872 F.2d 1416, 1421 (9th Cir.1989).

## II

### A. *Statutory Scheme*

The Social Security Act (the Act) is a comprehensive social welfare program first enacted by Congress in 1935. It is administered by the Secretary of Health and Human Services (the Secretary).

Title II of the Act, codified at 42 U.S.C. §§ 401–433 ("Old Age, Survivors and Disability Insurance"), establishes basic social security retirement benefits. Title XVI of the Act, codified at 42 U.S.C. §§ 1381–1383d, establishes Supplemental Security Income, to which aged, blind or disabled persons are entitled on a means tested basis. *See Lynch v. Rank*, 747 F.2d 528, 529–30 (9th Cir.1984). Cecilia Pottgieser was eligible for both these benefits.

Title XVIII of the Act, 42 U.S.C. § 1395, et seq. ("Health Insurance for the Aged and Disabled"), establishes Medicare, which is federally subsidized health insurance. Part A of Title XVIII, codified at 42 U.S.C. § 1395c–i–4 ("Hospital Insurance Benefits"), provides insurance for certain hospital and post-hospital services. *See Heckler v. Ringer*, 466 U.S. 602, 605–06, 104 S.Ct. 2013, 2016–17, 80 L.Ed.2d 622 (1984). Part B of Title XVIII, codified at 42 U.S.C. § 1395j–w–4 ("Supplementary Medical Insurance"), provides additional insurance for physician and outpatient services. *See Schweiker v. McClure*, 456 U.S. 188, 189–90, 102 S.Ct. 1665, 1666–67, 72 L.Ed.2d 1 (1982). Part B insurance is optional, does not depend on financial need,

and is funded by both the federal government and individual premiums.[1] 42 U.S.C. § 1395; *see McClure*, 456 U.S. at 190, 102 S.Ct. at 1667. A state may choose to enroll needy individuals in the program and pay the Part B premiums on their behalf.[2] Cecilia was a beneficiary of both these programs.

Title XIX of the Act, codified at 42 U.S.C. § 1396, et seq. ("Grants to States for Medical Assistance Programs"), establishes Medicaid. *See Schweiker v. Hogan*, 457 U.S. 569, 571–72, 102 S.Ct. 2597, 2600, 73 L.Ed.2d 227 (1982). Medicaid is a "cooperative federal-state health benefits assistance program," *Citizens Action League v. Kizer*, 887 F.2d 1003, 1005 (9th Cir.1989), under which the federal government reimburses states at least half the cost of providing health care. The program is optional, but once a state decides to participate it must comply with the federal government's requirements, listed at 42 U.S.C. § 1396a. *Harris v. McRae*, 448 U.S. 297, 301, 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784 (1980). Under the statute, states may again choose whether to pay providers directly or pay Part B premiums; if they choose the latter, the federal government pays part of the cost of the Part B premiums. 42 U.S.C. § 1396b(a)(1).

California participates in Medicaid and its program is known as Medi–Cal.[3] The state program is administered by the Director of the Department of Health Services (the Director). California has entered into an agreement with the Secretary to pay Part B premiums on behalf of Medi–Cal beneficiaries.

**B. *Lien Provision***

Besides reimbursement from the federal government, states may recover their costs from the estates of deceased recipients, with certain restrictions.[4] The statute provides:

> No adjustment or recovery of any *medical assistance correctly paid* on behalf of an individual under the State plan may be made, except ...
>
> (B) in the case of an[ ] individual who was 65 years of age or older when he received such assistance, from his estate.

42 U.S.C. § 1396p(b)(1) (emphasis added). The statute further provides:

> The term "medical assistance" means *payment of part or all of the cost* of the following care and services ... for ... individuals ... whose incomes and resources are insufficient to meet all of such cost—(1) inpatient hospital services [etc.].

42 U.S.C. § 1396d(a) (emphasis added). In the case of persons below a certain income level ("Qualified Medical Beneficiaries" or QMB's),[5] medical assistance includes "medicare cost-sharing," defined to include Part B premiums.[6]

The statute also sets forth a formula for calculating the federal government's share (the "Federal medical assistance percentage").[7] Once the percentage is calculated, the Secretary is instructed to pay from federal appropriations:

> an amount equal to the Federal medical assistance percentage ... of the *total amount expended* ... as *medical assistance* under the State plan (including expenditures for Medicare cost-sharing and

---

1. These funds are paid into the Federal Supplementary Medical Insurance Trust Fund, which in turn pays actual benefits.

2. To do so, the state must enter into an agreement with the Secretary. 42 U.S.C. § 1395v.

3. *See* Cal.Welf. and Inst.Code § 14000, et seq.

4. 42 U.S.C. § 1396a(18) requires states to comply with the lien restrictions.

5. 42 U.S.C. § 1396d(p)(1) defines "Qualified Medical Beneficiary."

6. 42 U.S.C. § 1396d(p)(3) defines "medicare cost-sharing" as "costs incurred ... without regard to whether the costs incurred were for items and services for which medical assistance is otherwise available under the plan," specifically "(A) Premiums under Part B" and "premiums for enrollment ... with an eligible organization."

7. The Federal medical assistance percentage is set between 50% and 83%. 42 U.S.C. § 1396d(b). The parties agree that California's percentage is 50%.

including expenditures for *premiums* under Part B ...)

42 U.S.C. § 1396b(a)(1) (emphasis added).

### III

### A. *Plain Meaning of the Statute*

■ We must determine whether the phrase "payment of all or part of the cost" of services, which is found in the definition of "medical assistance," includes premiums. We start with the plain meaning of the statute. *Citizens Action League,* 887 F.2d at 1006 (citations omitted).

The district court reasoned that the reach of the phrase turned on the types of services listed as "medical assistance." The court held the phrase excluded payment for premiums because they were "not payments for service" nor "similar in kind to the services listed."

The Director and the Secretary argue that premiums are a form of *payment* and therefore would not logically be included in a list of services. Furthermore, they argue, Congress considered premiums a form of payment, as shown by the provision for reimbursement by the federal government, and the federal payment provisions must control the definition of "medical assistance."

We disagree. A "definition which declares what a term 'means' ... excludes any other meaning that is not stated." *Colautti v. Franklin,* 439 U.S. 379, 392 n. 10, 99 S.Ct. 675, 684, n. 10, 58 L.Ed.2d 596 (1979) (quoting 2A C. Sands, Statutes and Statutory Construction § 47.07 (4th ed. Supp.1978)). In drafting § 1396d(a), Congress stated only that medical assistance consisted of payment of the *cost* of certain services. Medicare insurance premiums are unrelated to the cost of services rendered to an individual because they are set according to the aggregate amount expended by the entire program. Premiums are part of the "total amount expended" by a

state, but this is not the phrase Congress chose to use in drafting § 1396d(a).

Congress has chosen to specify in other sections of the statute that "costs" should include premiums. In determining Medicaid eligibility, states must "tak[e] into account ... the costs (whether in the form of insurance premiums or otherwise) incurred for medical care" by an individual. 42 U.S.C. § 1396a(a)(17); *see Hogan,* 457 U.S. at 574, 102 S.Ct. at 2601. QMB cost-sharing includes premiums; and federal payments to the states include premiums.

But on none of the many occasions when Congress has amended this statute has it incorporated a reference to premiums in its definition of "medical assistance." More often in the statute, costs of service and premiums are treated separately.[8] We conclude that under the plain language of the statute, costs of service are different than premiums, and premiums are not included in the definition of "medical assistance."

We must next determine whether Congress has "clearly expressed" a contrary legislative intent. *Citizens Action League,* 887 F.2d at 1006 (citation omitted). Here the statutory scheme reveals a clear intent that the state should be reimbursed by the federal government, but no clear intent that the estates of recipients be charged for premiums. The detailed description of "medical assistance" on which the appellants rely appears *only* in the federal payment provision of the statute and follows the phrase "total amount expended." No such broad phrase occurs in § 1396d(a) or § 1396p. The federal government is instructed to pay other indirect costs of providing services. Federal funding is, as the Secretary says in his brief, "the engine which drives Medicaid." The entire section (§ 1396) is entitled "Grants to the States." We find no clear expression of Congressional intent contrary to our conclusion that the estates of recipi-

---

**8.** For example, "payment of Part B premiums" is different than "meeting part or all of the cost of deductibles, cost-sharing or similar charges" for certain beneficiaries. 42 U.S.C. § 1396a(a)(10)(II). A state may not impose an "enrollment fee, premium or similar charge" on certain individuals *or* a "deduction, cost-sharing or similar charge." 42 U.S.C. §§ 1396a(a)(14); 1396*o*(a)(1), (2). In Part B, the "reasonable cost of any service" is defined as "the cost *actually incurred.*" 42 U.S.C. § 1395x(v)(1)(A) (emphasis added).

ents should not be charged for Part B premiums.

## B. *Legislative History*

The Director and the Secretary assert that the legislative history supports their reading of the statute. After our careful review, we find nothing in the legislative history inconsistent with our conclusion here. Early versions of the statute and accompanying explanations show that Congress considered "payment of costs" to be different from "premiums."[9] Later Congresses have been more concerned about cost recovery, but they have not changed the language of the lien provision at issue here.[10]

## C. *Regulations*

The Secretary argues on appeal that we should defer to his reading of the statute because his agency is entrusted with implementing it. We must consider an agency's interpretation of a statute only if the statute is ambiguous and in the absence of clear Congressional intent. *Chevron U.S.A. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843 & n. 9, 104 S.Ct. 2778, 2781 & n. 9, 81 L.Ed.2d 694 (1984).

We do not find the statute ambiguous or Congressional intent unclear, but we nevertheless reject the Secretary's argument. In *Citizens Action League,* we declined to be bound by an interpretative letter from the Department of Health and Human Services (HHS) because it "lack[ed] the indicia of deliberative administrative review" and "appear[ed] to have been written for the purposes of this litigation only." 887 F.2d at 1007 (citation omitted). The Secretary's brief suffers similar defects.

In addition, the Secretary's position in his brief conflicts with regulations promulgated by his department. The regulation governing recovery from an estate provides:

> The agency may make an adjustment or recover funds for Medicaid *claims* correctly paid for an individual....
>
> (i) From the estate of any individual who was 65 years of age or older when he or she received Medicaid ...

42 C.F.R. § 433.36(h)(i) (emphasis added).[11] Claims are not premiums.

California's state code similarly authorizes recovery from an estate for specific costs. Only "when a decedent has received health care services" may the state make a

---

9. See Social Security Amendments of 1960, Pub.L. 86–778 §§ 601(b), (c), 74 Stat. 924, *reprinted in* 1960 U.S.Code Cong. & Admin.News at 1299, 1377, 1378, 1380; S.Rep. No. 1856, 86th Cong., 2d Sess., *reprinted in* 1960 U.S.Code Cong. & Admin.News 3608, 3715–16; Conf.Rep. No. 2165, *reprinted in* 1960 U.S.Code Cong. & Admin.News 3749, 3757–58; *see also* Social Security Amendments of 1965, Pub.L. 89–97 § 121, 79 Stat. 286, *reprinted in* 1965 U.S.Code Cong. & Admin.News 305, 374, 376, 379; S.Rep. No. 404, 89th Cong., 1st Sess., *reprinted in* 1965 U.S.Code Cong. & Admin.News 1943, 1950–51, 2021, 2023, 2126; Conf.Rep. No. 682, 89th Cong., 2d Sess., *reprinted in* 1965 U.S.Code Cong. & Admin. News at 2228, 2236.

10. See The Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. 97–248 § 132, 96 Stat. 324, *reprinted in* 1982 U.S.Code Cong. & Admin. News, 96 Stat. 324; S.Rep. 97–494, 97th Cong., 2d Sess., *reprinted in* 1982 U.S.Code Cong. & Admin.News 781, 813–15; Omnibus Budget Reconciliation Act of 1986, Pub.L. 99–509 § 9403, 100 Stat. 2053, *reprinted in* 1986 U.S.Code Cong. & Admin.News; Medicare Catastrophic Coverage Act of 1988, Pub.L. 100–360 § 301(h), 102 Stat. 748, 750 (July 1, 1988), *reprinted in* 1988

U.S.Code Cong. & Admin.News at 803; H.R.Rep. No. 100–105(II), 100th Cong., 2d Sess., *reprinted in* 1988 U.S.Code Cong. & Admin.News 857, 883; House Conf.Rep. No. 100–661, *reprinted in* 1988 U.S.Code Cong. & Admin.News 923, 1033.

11. Similarly, liens may be placed on property owned by patients in long-term care for *"claims paid."* 42 C.F.R. § 433.36(g)(2)(i); 42 C.F.R. § 435.725.

The regulations define "payments for services" in some detail. 42 C.F.R. § 447.1, et seq. Rates of payment for services are set according to actual costs or customary charges. 42 C.F.R. § 447.250 (inpatient care); § 447.203 (physician services). Payments are made chiefly directly to recipients, § 447.25; to providers, § 447.30; and for capital expenditures, § 447.35.

The regulations mention premiums only in connection with cost-sharing, § 447.50, and in calculating a beneficiary's available income, from which cost of insurance premiums must be deducted. 42 C.F.R. § 435.725(c)(4). Premiums may be charged to beneficiaries in proportion to their incomes, § 447.50–51; no premium may be imposed on the "categorically needy." 42 C.F.R. § 447.51.

claim in "an amount *equal to the payments* for the health care *services received.*" [12] "Health care services" are defined in terms of specific benefits.[13]

Both the federal regulations and the state statute are consistent with our reading of the federal statute that payment of the cost of "medical assistance" does not include premiums.

### D. *Conclusion*

With few exceptions, Congress has kept its consideration of the "cost of services" separate from its consideration of "premiums." On no occasion has Congress amended the language of the lien provision at issue here or the definition of "medical assistance" to include premiums. The Secretary's regulations allow recovery only of "claims" and California's statute authorizes recovery of payments for "services received." Claims are not premiums.

The language of the statute, the legislative history, and the regulations implementing the statute persuade us that Congress intended to exclude state-paid premiums from costs recoverable from recipients' estates.

### IV

Pottgieser requests attorneys' fees on appeal under the Equal Access to Justice Act, 28 U.S.C. § 2412 (EAJA). Under the EAJA, the prevailing party is entitled to fees unless the government's position is "substantially justified." To be "substantially justified," the government's position must have a "reasonable basis in law and fact." *Pierce v. Underwood,* 487 U.S. 552, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988). Failure to prevail does not raise a presumption that the government's position was unreasonable. *Kali v. Bowen,* 854 F.2d 329, 332 (9th Cir.1988). If the statutory scheme to be considered is complex, *id.* at 334, or if the analysis required, even for a straightforward statute, is "exceptional," *Southern Oregon Citizens v. Clark,* 720 F.2d 1475, 1481 (9th Cir.1983),

then fees may be denied. We find the Secretary's litigation position had a reasonable basis and the Social Security statutes to be complex. We decline to award fees for this appeal.

### V

The district court's order granting summary judgment is AFFIRMED.

---

12. Cal.Welf. and Inst.Code § 14009.5(a) (emphasis added).

13. Cal.Welf. and Inst.Code § 14053. "Payment" is not defined.