Gary BRYANT, Plaintiff–Appellant,

v.

FORD MOTOR CO.,
Defendant–Appellee.

Nos. 84–6389, 85–5698.

United States Court of Appeals,
Ninth Circuit.

Following the United States Supreme
Court's Order Vacating Certiorari
Dec. 12, 1988.

Submitted Jan. 27, 1989.

Decided Sept. 25, 1989.

Michael L. Goldberg, Greene, O'Reilly, Broillet, Paul, Simon, McMillan, Wheeler & Rosenberg, Los Angeles, Cal., for plaintiff-appellant.

Howard J. Privett, Richard A. Goette and Ralph Zarefsky, McCutchen, Black, Verleger & Shea, Los Angeles, Cal., for defendant-appellee.

United States District Court for the Central District of California.

Before WALLACE, HUG, and HALL, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

This court has had an enduring relationship with this case, although we never have considered the merits of plaintiff-appellant Gary Bryant's contention that the district court below erred by entering summary judgment in favor of defendant-appellee Ford Motor Corporation. Instead, we have concluded—on two occasions—that the district court lacked subject matter jurisdiction to enter judgment due to the presence of doe defendants. *See Bryant v. Ford Motor Co.*, 794 F.2d 450 (9th Cir.1986); *Bryant v. Ford Motor Co.*, 844 F.2d 602 (9th Cir.1987) (en banc) (*Bryant II*). In our *Bryant II* en banc decision, we overruled numerous cases that had created exceptions to the general rule in this circuit that doe defendants defeat diversity jurisdiction.

As *Bryant II* overturned the judgment entered in Ford's favor, Ford filed a petition for certiorari, which the Supreme Court granted on October 3, 1988. —— U.S. ——, 109 S.Ct. 54, 102 L.Ed.2d 32 (1988). On November 19, 1988, the President signed into law the Judicial Improvements and Access to Justice Act of 1988, Pub.L. 100–702, 102 Stat. 4642 (1988) (the "Act"). Section 1016(a) of Title X of the Act contains an amendment to the removal statute that provides that doe defendants do not defeat diversity jurisdiction. 102 Stat. at 4669. On December 5, 1988, the Supreme Court vacated its order granting the petition for certiorari and denied the petition. —— U.S. ——, 109 S.Ct. 542, 102 L.Ed.2d 572 (1988).[1]

Fed.R.App.P. 41(b) provides that the circuit courts shall issue the mandate "immediately" following the denial of a petition for writ of certiorari.[2] On December 7, 1988, Ford filed an emergency motion to stay the mandate, which the *en banc* court granted. Ford's motion preceded this

---

1. On November 17, 1988, Ford filed a brief in the Supreme Court arguing that the Act, yet to be signed into law, would govern this case. Following the President's approval, Ford filed a motion in the Supreme Court for the summary reversal of *Bryant II.* The Court, however, denied certiorari without ruling on Ford's motion.

2. Ford successfully moved this court for a stay of the mandate subsequent to our judgment in *Bryant II,* which continued throughout its appeal to the Supreme Court pursuant to Rule 41(b).

court's receipt on December 12, 1988, of the Supreme Court's order denying certiorari. On December 20, 1988, Ford filed a motion to extend the stay of mandate and to vacate the *en banc* opinion. On January 25, 1989, the *en banc* court referred this motion to this three-judge panel. We first address Ford's motion to stay the mandate in this opinion. As a result of Ford's motion the mandate has not yet issued.

## I

■ Section 1016(a) of the Act amends 28 U.S.C. § 1441(a) by adding the following sentence: "For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded." Congress obviously reached the conclusion that doe defendants should not defeat diversity jurisdiction. Ford argues that this amendment controls this case. If it does, then our *en banc* opinion in *Bryant II* ordering the district court to remand this case to the state court must be vacated, and we will have to reach the merits of Bryant's appeal.

Congress did not specify an "effective date" for section 1016(a). Consequently, it was unclear whether it applied to cases pending when the Act became law. Where a case is pending on direct review "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley v. Richmond School Board,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). In *Kruso v. International Telephone & Telegraph Corp.,* 872 F.2d 1416, 1425 (9th Cir.1989), *amended* (June 26, 1989), this court held that section 1016(a) fell within the general rule: "section 1016(a) took effect upon passage and applies to cases pending on that date." We find no manifest injustice in applying *Kruso's* holding to this case.

## II

Despite the *Kruso* decision, Bryant raises three challenges to application of section 1016(a): first, this court can stay the mandate only under exceptional circumstances, which are not present; second, the *Bradley* presumption is inapplicable because this case is not pending on direct review; and third, application of section 1016(a) is unconstitutional.

### A

Bryant is correct that "[t]here is no provision in the United States Code or the Federal Rules of Appellate procedure that permits an appellate court to prevent or delay issuance of its mandate" following the denial of certiorari. In fact, Rule 41(b) expressly directs that "[u]pon the filing of a copy of an order of the Supreme Court denying the petition for writ of certiorari the mandate shall issue immediately." Nonetheless, Bryant does not contend that this court is powerless to stay issuance of the mandate. Bryant concedes that we retain jurisdiction where a party moves for a stay of the mandate prior to this court's receipt of the Supreme Court's order denying certiorari. But he argues that a stay is warranted only where exceptional circumstances would justify an order recalling the mandate.

Rule 41(a) provides that the mandate shall issue 21 days following a circuit court's judgment. But the Rule authorizes a circuit court to stay the issuance of the mandate beyond this 21–day period. No exceptional circumstances need be shown to justify a stay. This matter is entrusted to the circuit court's sound discretion. Rule 41(b) provides that a circuit court may stay the mandate pending the filing of an application for a writ of certiorari, and that any such stay shall continue until "final disposition" by the Supreme Court.[3]

Ordinarily, then, a party seeking a stay of the mandate following this court's judgment need not demonstrate that exceptional circumstances justify a stay. The situa-

---

3. Ninth Circuit Rule 41–1 provides that a stay pending petition to the Supreme Court will not be granted "as a matter of course, but will be denied if the Court determines that the petition for certiorari would be frivolous or filed merely for delay."

tion changes markedly, however, once the Supreme Court has denied the petition for a writ of certiorari. Rule 41(b) orders that the mandate "shall issue immediately" upon the denial of certiorari. Consequently, a circuit court's issuance of the mandate following the denial of certiorari ordinarily is a ministerial act. For this reason, Bryant argues that a stay following the denial of certiorari is the exceptional case, analogous to a circuit court's decision to recall a mandate.

While no statute or rule so provides, we have recognized a circuit court's inherent power to recall its mandate to prevent injustice or to protect the integrity of its process. *See Zipfel v. Halliburton Co.,* 861 F.2d 565, 567 (9th Cir.1988); *Aerojet–General Corp. v. American Arbitration Ass'n,* 478 F.2d 248, 254 (9th Cir.1973). The power of a Court of Appeals to recall its mandate should only be exercised in exceptional circumstances, such as to protect the integrity of its own processes, to prevent injustice, or for other good cause. *Zipfel,* 861 F.2d at 567. Recalling the mandate is solely within the circuit court's discretion. *Id.* Although this court has not addressed our inherent power to stay the mandate upon proper motion following the Supreme Court's denial of certiorari, the Fourth Circuit has done so in *Alphin v. Henson,* 552 F.2d 1033 (4th Cir.), *cert. denied,* 434 U.S. 823, 98 S.Ct. 67, 54 L.Ed.2d 80 (1977).

In *Alphin,* the appellate panel previously had affirmed a finding that the plaintiffs had proved the defendant's attempted monopolization, but it held that plaintiffs were not entitled to attorney's fees because they could not prove damages. *Id.* at 1034. The plaintiffs petitioned for certiorari and, while the petition was pending, Congress amended the antitrust laws to provide for attorney's fees whenever a plaintiff substantially prevails. After the Supreme Court denied certiorari, but prior to the circuit's receipt of a notice of denial of certiorari, the plaintiff moved the circuit court to stay issuance of the mandate and

to award him attorney's fees based upon the new law.

The *Alphin* court concluded that it would not work a manifest injustice to apply the new attorney's fees statute to the case pending before it. The court found the *Bradley* presumption applicable because "[o]ur control over a judgment of our court continues until our mandate has issued." *Id.* at 1035. Thus, the court treated a change in the law occurring in this procedural posture the same as a change in the law occurring before an appellate court files its judgment. In other words, the court interposed no special requirement of exceptional circumstances in order to stay the mandate following the denial of certiorari.

██ We agree with the *Alphin* court that a circuit court has the inherent power to stay its mandate following the Supreme Court's denial of certiorari. "An appellate court's decision is not final until its mandate issues." *Mary Ann Pensiero, Inc. v. Lingle,* 847 F.2d 90, 97 (3d Cir.1988). However, Bryant appropriately objects to a reading of *Alphin* that makes it obligatory for an appellate court to stay its mandate in this situation. The *Alphin* court did not expressly interpose a threshold requirement of exceptional circumstances before the mandate would be stayed.[4] Yet, we find that Rule 41(b)'s express direction that the mandate shall be issued immediately upon the denial of certiorari makes such a threshold showing necessary. "For most purposes, the entry of judgment, rather than the issuance of mandate, marks the effective end to a controversy on appeal." *Finberg v. Sullivan,* 658 F.2d 93, 96 n. 5 (3d Cir.1981) (en banc).

██ In the nearly unprecedented procedural posture of this case, we find that exceptional circumstances justify a stay of the mandate. In our recent *Zipfel* decision, we concluded that recalling the mandate was appropriate where the Supreme Court decided a case shortly after our decision

---

**4.** The *Alphin* court's discussion of the factors favoring retroactive application of the new law indicates that it identified exceptional circum-

stances favoring a stay, *see Alphin,* 552 F.2d at 1034–35, but it did not acknowledge this prerequisite expressly.

that partly was inconsistent with our approach. We chose to exercise our power to recall the mandate " '[b]ecause of an overpowering sense of fairness and a firm belief that this is the exceptional case requiring recall of the mandate in order to prevent injustice....' " *Zipfel*, 861 F.2d at 567–68 (quoting *Verrilli v. City of Concord*, 557 F.2d 664, 665 (9th Cir.1977)).

As an abrupt change in the law shortly after the panel's opinion justifies a recall of the mandate, Congress's action while this case was pending on certiorari justifies a stay of the mandate, and we choose to exercise our discretion to do just that in this case. Congress's enactment of the Act after the Supreme Court had granted certiorari conceivably deprived Ford of its day in court before the Supreme Court. By denying certiorari, the Supreme Court certainly put its precious resources to better use than it would have addressing an issue that Congress already had settled, at least for all future lawsuits. Had Congress acted specifically to overrule our *Bryant II* decision, it would have been patently unfair to deprive Ford the benefit of that action. Yet, the Act's legislative history fails to rule out *Bryant II*'s relevance.[5] Justice demands that Fords' arguments for the affirmance of the district court's summary judgment receive a judicial forum.[6]

### B

■ While a stay of the mandate is justified in this case, we must apply *Kruso*'s holding that section 1016(a) applies to pending cases. In *Kruso*, the Act became law subsequent to the district court's judgment but before we filed our opinion. Here, the Act became law after both the district court's judgment and our own. While *Kruso* might appear dispositive, we must first decide whether, given its unusual procedural posture, this is a pending case for purposes of *Kruso*.

The *Bradley* Court stated that "a court is to apply the law in effect at the time it renders its decision." 416 U.S. at 711, 94 S.Ct. at 2016. Bryant is correct that the cases Ford cites involve changes in the law occurring "subsequent to the judgment and *before* the decision of the appellate court." *United States v. Schooner Peggy*, 5 U.S. (1 Cranch) 103, 110, 2 L.Ed. 49 (1801) (emphasis added). Bryant submits that the process of direct review ended, at the latest, when the Supreme Court denied the petition for a writ of certiorari.

The *Bradley* Court drew a "distinction between the application of a change in the law that takes place while a case is on direct review, on the one hand, and its effect on a final judgment under collateral attack, on the other hand." 416 U.S. at 711, 94 S.Ct. at 2016. As evidence that this case is no longer on direct review, Bryant cites the Supreme Court's definition of "final judgment": " 'the availability of appeal' has been exhausted or has lapsed, and the time to petition for certiorari has passed." *Id.* at 711 n. 14, 94 S.Ct. at 2016 n. 14. Bryant reasons that, as the time has now passed to petition for certiorari, this case is no longer on direct appeal. We disagree.

This issue is not unrelated to our decision to stay the mandate; where the mandate has not issued the availability of appeal has not yet been exhausted. *See Alphin*, 552

---

**5.** The proposal to disregard doe defendants originated with the United States Judicial Conference, which transmitted its recommendations to Congress. *See Reports of the Proceedings of the Judicial Conference of the United States* 71 (1987). Yet, given the contemporaneous enactment of the the Act and the granting of certiorari in *Bryant II,* it is unlikely that Congress was ignorant of our decision.

**6.** Bryant argues that Ford "must do much more than demonstrate a change in the statutory law" to justify a stay of the mandate. Bryant relies upon a recall of the mandate case, *United States v. Tulare Lake Canal Co.,* 677 F.2d 713, 715 (9th

Cir.1982), where we said that "[a] change in controlling authority or a conviction that the court erred are ordinarily not alone sufficient grounds for recall of a mandate after final judgment." But the Supreme Court *vacated* our decision in *Tulare Lake,* a fact Bryant overlooks. *See* 459 U.S. 1095, 103 S.Ct. 712, 74 L.Ed.2d 943 (1983). Even assuming that *Tulare Lake* correctly identified the general rule, it is not unprecedented for a court to recall a mandate to consider a subsequent change in the law. *See Zipfel, supra; United States v. Kismetoglu,* 476 F.2d 269 (9th Cir.), *cert. dismissed,* 410 U.S. 976, 93 S.Ct. 1454, 35 L.Ed.2d 709 (1973).

F.2d at 1035 ("our control over a judgment of our court continues until our mandate has issued"); *Mary Ann Pensiero*, 847 F.2d at 97 ("An appellate court's decision is not final until its mandate issues"). *Bradley* describes a dichotomy between review in collateral proceedings and direct review. Bryant would have us conclude that where an appellate court stays the mandate following the denial of certiorari for further consideration, its formerly direct review suddenly mutates into collateral review. We find this proposition both remarkable and unacceptable.

Nothing prevents the Supreme Court from granting certiorari on the issue which we decide. As enumerated in 28 U.S.C. § 1254(1), the Supreme Court may review a case from a court of appeals "[b]y writ of certiorari granted upon the petition of any party to any civil or criminal case, before or after rendition of judgment or decree." The statute notably imposes no limitations as to the status of the case, effectively giving the Supreme Court plenary authority to grant certiorari over cases coming from the federal courts of appeals. *See Forsyth v. City of Hammond*, 166 U.S. 506, 513, 17 S.Ct. 665, 668, 41 L.Ed. 1095 (1897) (describing the Supreme Court's authority to grant certiorari under an earlier form of the present statute as "comprehensive and unlimited"); *see also Hughes Tool Co. v. Trans World Airlines, Inc.*, 409 U.S. 363, 365 n. 1, 93 S.Ct. 647, 650 n. 1, 34 L.Ed.2d 577 (1973) (concluding that a prior dismission of certiorari does not foreclose the Court from reaching a new issue where the court of appeals ruled that its prior decision was not a final judgment).

Therefore, we hold that our holding in *Kruso* governs this case.

**C**

The Act amended 28 U.S.C. § 1447 to add subsection (e), which provides that "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." Bryant argues that a district court's power to maintain jurisdiction while denying a plaintiff's motion to add a nondiverse defendant violates principles of federalism and the equal protection clause. He also claims that the district court's power to disregard doe defendants deprives him of a property interest protected by the due process clause of the fifth amendment.[7] Bryant reasons that if this amendment creating section 1447(e) is unconstitutional, then so is the entire Act, including the jurisdictional amendment to section 1441(a).

Bryant addresses a critical threshold issue in a footnote: his standing to challenge section 1447(e). Obviously, the district court did not enter judgment against Bryant on the authority of section 1447(e). It was not in existence. Recognizing this formidable obstacle, Bryant argues that this court can only affirm the district court's entry of summary judgment upon a "determination that the district Court's refusal to permit BRYANT to amend his complaint and join the additional defendants was appropriate under the new (and retroactively applied) 28 U.S.C. 1447(e)."

Bryant's premise is faulty. As we explain in our analysis of the merits of his appeal, *infra*, the district court did not deny a motion to amend the complaint to add new defendants—Bryant never filed such a motion and only sought to add new defendants after the entry of judgment. As Bryant is incorrect that we can affirm the district court's rulings only by reference to the new section 1447(e), he lacks standing to challenge this amendment. *See Waste Management of North America, Inc. v. Weinberger*, 862 F.2d 1393, 1398 (9th Cir.1988) (generalized grievance insufficient to confer standing).

We, therefore, vacate our *en banc* opinion in *Bryant II* ordering the district court to remand this case to the state court, and

---

**7.** Bryant correctly notes that in California a plaintiff has a statutory right to amend his complaint to substitute a named defendant for a doe defendant. *See, e.g., Barrows v. American Motors Corp.*, 144 Cal.App.3d 1, 7, 192 Cal.Rptr. 380, 382 (1983).

we now address the merits of Bryant's appeal.

## III

Bryant sued Ford as a result of injuries he sustained while driving in a United Parcel Service van on March 1, 1983. Bryant filed suit on January 27, 1984, in Los Angeles Superior Court, alleging that the van had a defective restraint system and driver's seat. Bryant named Ford as the only known defendant, but he also alleged that Does 1 through 50 were responsible for his injuries. Ford filed a petition to remove the case to federal court on March 29, 1984, alleging diversity between Bryant, a citizen of California, and Ford, a Delaware corporation with its principal place of business in Michigan.

### A

Bryant took discovery by interrogatories, seeking to learn the identities of other parties allegedly responsible for the design, manufacture, and sale of the van. Due to its corporate policy of destroying certain records after ten years, Ford had no documents concerning the van. On May 10, 1984, the parties met and inspected the van. Present was a Ford engineer, who concluded that Ford had manufactured only the chassis and that Ford had not participated in the assembly of the van or in the manufacture of the restraint system of the driver's seat.

Ford filed a motion for summary judgment on July 9, 1984. Bryant's counsel informed the court on August 6, 1984, that he believed that the van was purchased from City Ford Company, that General Seating and Sash Company had manufactured the seating system, that Grumman Corporation had manufactured the truck body, and that an unknown manufacturer in Pacoima, California, had made the passive restraint system. Bryant's counsel's statement, however, was not an affidavit based upon personal knowledge as required by Fed.R.Civ.P. 56(f). In addition, he did not move the court to amend the complaint to add these parties, nor did he petition the court to stay Ford's motion for summary

judgment until Bryant could complete discovery on the identities of other possible defendants. Finding no genuine issue as to any material fact, the district court entered summary judgment in Ford's favor based upon a lack of evidence that Ford was connected to the driver's seat or the passive restraint system.

What followed was a bizarre series of procedural developments precipitated by Bryant's attempt to resurrect his case. Bryant filed a motion for leave to add additional defendants, or in the alternative, for a remand to state court. The district court did not act on these motions, having concluded that it was without jurisdiction. Bryant filed a notice of appeal on September 26, 1984. Nonetheless, in an attempt to provide the district court with jurisdiction to consider his post-judgment motion, Bryant then filed a motion pursuant to Fed.R.Civ.P. 60(b)(6) for relief from the judgment, or in the alternative, for reconsideration of the order granting summary judgment. The district court denied these requests.

On January 22, 1985, this court concluded that the district court lacked jurisdiction to enter its order denying Rule 60(b) relief, because Bryant's notice of appeal had divested the district court of jurisdiction. We remanded the case so that the district court could rule on Bryant's motions. On February 8, 1985, the district court again denied Bryant's motion for reconsideration and relief from the judgment. Bryant timely appealed.

### B

■ Bryant does not argue that a genuine issue as to any material fact remained concerning Ford's liability. Indeed, Bryant states that "summary judgment was entered in favor of FORD after early discovery indicated that FORD was most likely not responsible for the allegedly defective seat and passive-restraint systems." But Bryant argues that his action against the doe defendants still was pending when the district court entered summary judgment against Ford. In other words,

Bryant argues that the district court only entered judgment against Ford and that "the balance of the case, against the remaining [doe] defendants, remain[ed] alive and active in the district court." As support, Bryant cites Fed.R.Civ.P. 54(b), which provides that, when multiple parties are involved, unless the district court directs the entry of a final judgment for fewer than all of the parties, a judgment against one party does "not terminate the action as to any of the claims or parties...."[8]

This court already has rejected the proposition that the presence of doe defendants in Bryant's complaint meant that the summary judgment in favor of Ford was not a final judgment. *See Bryant II*, 844 F.2d at 604 n. 2. In any event, Bryant's argument is unavailing under the new amendment to section 1441(a), which provides that doe defendants "shall be disregarded." Accordingly, we reject Bryant's argument that the district court's judgment failed to terminate the action against the doe defendants.[9]

**C**

■ Generally, we review a grant of summary judgment de novo. *See Ashton v. Cory*, 780 F.2d 816, 818 (9th Cir.1986). However, Bryant challenges the district court's alleged failure to permit adequate discovery before ruling on the motion. We review the district court's failure to continue the motion and permit additional discovery for an abuse of discretion. *See Beneficial Standard Life Ins. Co. v. Madariaga*, 851 F.2d 271, 277 (9th Cir.1988).

Rule 56(f) authorizes a district court to delay ruling on a summary judgment motion where the opposing party files an affidavit explaining the need for a continuance.[10] Bryant, however, did not file a Rule 56(f) affidavit. Bryant's failure to request that the district court delay a ruling on Ford's summary judgment motion until he had more time to identify other potential defendants is explained by his misapprehension that his case would continue pending against the doe defendants notwithstanding Ford's dismissal. This was Bryant's mistake, not the district court's. Nonetheless, Bryant contends that the district court should have *sua sponte* continued its ruling on Ford's motion.

Bryant relies upon the principle that "[g]enerally where a party has had no previous opportunity to develop evidence and the evidence is crucial to material issues in the case, discovery should be allowed before the trial court rules on a motion for summary judgment." *Program Engineering, Inc. v. Triangle Publications, Inc.*, 634 F.2d 1188, 1193 (9th Cir.1980). It is far from clear, however, that the district court rushed to judgment. Ford removed this case on March 29, 1984, and the district court entered summary judgment on August 20, 1984, about five months later. *See Hall v. Hawaii*, 791 F.2d 759, 760–61 (9th Cir.1986) (affirming summary judgment entered four months after filing of suit). In addition, there was no likelihood that Ford, the only defendant before the court, was going to be able to identify any other par-

**8.** Given Bryant's concession that summary judgment appropriately was entered against Ford, his vigorous pursuit of the doe defendants perhaps is explained by a desire to preserve the tolling of the statute of limitations effected by the naming of doe defendants.

**9.** As an aside, we note that Bryant's view of the continuing presence of doe defendants in federal court is incorrect under our prior case law. Before *Bryant II*, doe defendants precluded the removal of a case to federal court unless they could be characterized as shams. *See Bryant II*, 844 F.2d at 605. Consequently, whenever a case with doe defendants was permitted to proceed in federal court, it was only because they were

appropriately "ignored." *Chism v. National Heritage Life Ins. Co.*, 637 F.2d 1328, 1330 (9th Cir.1981). Thus, Bryant's suggestion that a federal district court previously had jurisdiction to entertain claims against doe defendants is incorrect.

**10.** Rule 56(f) provides as follows: "Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

ties, given that it no longer maintained any records about the van.

Finally, Bryant's failure to comply with Rule 56(f) is relevant. While *Program Engineering* concluded that a Rule 56(f) affidavit is not always necessary in order "to raise in the lower court the issue whether [the opponent] was entitled to additional discovery," 634 F.2d at 1193, the absence of a formal request for a continuance is relevant to the question whether the district court abused its discretion by ruling on the motion when it did, *see Beneficial Standard*, 851 F.2d at 277 (opponent's "informal, oral requests to the court for more time to conduct discovery fell short of compliance with Rule 56"); *Brae Transp., Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th Cir.1986) ("Failure to comply with the requirements of Rule 56(f) is a proper ground for denying discovery and proceeding to summary judgment."); *Foster v. Arcata Associates, Inc.*, 772 F.2d 1453, 1467 (9th Cir.1985) ("We reject appellant's claim because she failed to follow the proper procedures under the Federal Rules of Civil Procedure for obtaining a continuance or other appropriate discovery order when opposing a motion for summary judgment."), *cert. denied*, 475 U.S. 1048, 106 S.Ct. 1267, 89 L.Ed.2d 576 (1986). For these reasons, we conclude that the district court did not abuse its discretion by deciding Ford's summary judgment motion when it did.[11]

## IV

For the reasons outlined in this opinion, we VACATE the judgment of this court entered in *Bryant II,* and AFFIRM the district court's entry of summary judgment.

---

**11.** Bryant does not argue on appeal that the district court abused its discretion by denying his Rule 60(b) motion for relief from the judgment. We review the district court's ruling on a Rule 60(b) motion for an abuse of discretion.

*Thompson v. Housing Authority of the City of Los Angeles,* 782 F.2d 829, 832 (9th Cir.), *cert. denied,* 479 U.S. 829, 107 S.Ct. 112, 93 L.Ed.2d 60 (1986). The record provides no indication that the district court abused its discretion.