John Harvey **ADAMSON,**
Petitioner–Appellant,

v.

Samuel A. **LEWIS,**\* Director, Arizona Department of Corrections, et al.,
Respondents–Appellees.

No. 84–2069.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 13, 1990.

Decided Jan. 30, 1992.

---

\* Samuel A. Lewis is substituted for his predecessor, James G. Ricketts, as Director of Arizona Department of Corrections. Fed.R.App.P. 43(c)(1).

Timothy J. Foley, San Francisco, Cal., and Timothy K. Ford, MacDonald Hoague & Bayless, Seattle, Wash., for petitioner-appellant.

Jack Roberts, Asst. Atty. Gen., Phoenix, Ariz., for respondents-appellees.

Before HUG, SCHROEDER, PREGERSON, ALARCON, FERGUSON, D.W. NELSON, BOOCHEVER, NORRIS, BEEZER, BRUNETTI and THOMPSON, Circuit Judges.

HUG, Circuit Judge:

This death penalty case involves the fifth time this court has considered a challenge by John Harvey Adamson to the State of Arizona's efforts to sentence him to death, and the third time this court has sat *en banc* to review Adamson's sentence. A thorough history of the background of this case is set forth in our prior *en banc* decision. *Adamson v. Ricketts*, 865 F.2d 1011, 1013–16 (9th Cir.1988), *cert. denied sub nom., Lewis v. Adamson*, —— U.S. ——, 110 S.Ct. 3287, 111 L.Ed.2d 795 (1990).

In our *en banc* decision, we held the sentence of death to be unconstitutional on six grounds. The State petitioned for certiorari to the United States Supreme Court.

One day before ruling on that petition, the Supreme Court filed the decisions in *Walton v. Arizona*, — U.S. —, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), and *Lewis v. Jeffers*, — U.S. —, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990), which upheld the constitutionality of the Arizona death penalty statute against two challenges similar to those relied upon in our *en banc* decision. The following day, the State's petition for certiorari in this case was denied.

Prior to issuance of the mandate by our Clerk's office, the State filed a motion with our court to stay the issuance of the mandate and a motion for a rehearing and a rehearing *en banc* before the full court. The ground for the motions is that the cases of *Walton, Lewis,* and a third prior case, *Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989), undermined the authority of our decision in this case. The State contended that even though the Supreme Court denied certiorari and did not vacate this case, we should withhold the mandate and reconsider the case in light of these subsequent Supreme Court decisions.

A subsequent issue arose when the State and Adamson entered into a Stipulation and Cooperation Agreement that could result in reinstating the original 1977 plea agreement. The State contends that the case is moot and therefore the appeal should be dismissed and the judgment vacated. We hold that the case is not moot and that the mandate should not be withheld, but should be issued forthwith.

## I.

### Background

Adamson first appealed to this court in 1980 after the district court rejected Adamson's petition for habeas corpus review of the state court's order vacating his sentence of imprisonment, his judgment of conviction, and his guilty plea to second degree murder, and after the State had proceeded to prosecute Adamson for first degree murder. In an unpublished disposition, a three-judge panel of this court affirmed the district court's denial of Adamson's petition. *Adamson v. Hill*, 667 F.2d 1030 (9th Cir.1981) (unpublished disposition).

Following Adamson's conviction and death sentence, and after Adamson had exhausted all of his state remedies, a three-judge panel of this court then affirmed the district court's denial of Adamson's second petition for habeas corpus review. *Adamson v. Ricketts*, 758 F.2d 441 (9th Cir.1985) (*Adamson I*). This en banc panel then reversed the three-judge panel on double jeopardy grounds, *Adamson v. Ricketts*, 789 F.2d 722 (9th Cir.1986) (en banc) (*Adamson II*), and was in turn reversed by the Supreme Court. *Ricketts v. Adamson*, 483 U.S. 1, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987). On remand, in ruling on issues that we had expressly declined to address in our prior opinion, we found Adamson's death sentence to be unconstitutional on various constitutional grounds and remanded the case to the district court with instructions to grant the writ unless the State, within a reasonable time, resentenced Adamson to a sentence other than death. *Adamson v. Ricketts*, 865 F.2d 1011, 1044 (9th Cir.1988) (*en banc*) (*Adamson III*). The State petitioned the Supreme Court for certiorari and we entered a stay of the issuance of the mandate pending the Supreme Court's action on the petition.

The issues before us now arise from actions taken by the State following the Supreme Court's denial of the petition for certiorari. The relevant facts and prior proceedings surrounding the present case are set forth below.

## II.

### The 1988 En Banc Decision

In the opinion filed December 22, 1988, this *en banc* court addressed the following claims of constitutional violations: (1) seeking and imposing the death penalty after Adamson asserted his Fifth Amendment right against self-incrimination constituted prosecutorial and judicial vindictiveness; (2) the judge's imposition of the death penalty, when he had originally determined that a sentence of 48–49 years was the appropriate penalty for Adamson, was judi-

cial arbitrariness that violated the Eighth Amendment; (3) the Arizona death penalty statute violated Adamson's Sixth Amendment rights to a jury determination of the existence of aggravating circumstances; (4) the statute utilized an aggravating factor that was unconstitutionally vague; (5) the statute violated the Eighth Amendment by precluding meaningful consideration of all mitigating circumstances and by creating a presumption of imposition of a death sentence; and (6) the State trial court erroneously admitted evidence in violation of the Confrontation Clause. *Adamson III*, 865 F.2d at 1016–17. In reversing the district court by upholding five of Adamson's asserted claims, we held that the State's decision to seek the death penalty after previously agreeing to a term of imprisonment raised a presumption of prosecutorial vindictiveness sufficient to warrant a remand to the district court for an evidentiary hearing, but found insufficient evidence of judicial vindictiveness. *Id.* at 1017. However, we held that the state trial judge's imposition of the death penalty was arbitrary in violation of the Eighth and Fourteenth Amendments. *Id.* at 1020. We also held that the Arizona death penalty statute was unconstitutional on all three of the grounds asserted by Adamson. *Id.* at 1029, 1038, 1039. We affirmed the district court's rejection of Adamson's claim that the admission of certain hearsay statements at trial violated the Confrontation Clause. *Id.* at 1044.

The State timely petitioned for rehearing on January 9, 1989. The petition was not accompanied by a suggestion for rehearing by the full *en banc* court. On February 1, 1989, a majority of this panel denied the State's petition for rehearing. We granted the State's motion to stay issuance of the mandate pending the Supreme Court's final disposition of the State's petition for certiorari review. On March 20, 1989, the State filed its petition for certiorari to the Supreme Court. The Supreme Court denied the State's petition on June 28, 1990, and

the denial was filed with this court on July 2, 1990.[1]

After the Supreme Court's denial of certiorari, but prior to issuance of this court's mandate, the State filed a motion to stay issuance of the mandate on July 10, 1990. Also on July 10, 1990, the State submitted a "Motion For Rehearing and Suggestion for Rehearing Before Full En Banc Court," which was followed by a "Motion to Circulate Petition For Rehearing Before the Full Court" submitted on July 16, 1990. This was the State's first request for rehearing before the full *en banc* court.

### III.

### *Mootness Contention*

■ While these issues were pending, the State and Adamson entered into a "Stipulation and Cooperation Agreement," which essentially reinstated the January 15, 1977 plea agreement. The Stipulation and Cooperation Agreement was approved by the Superior Court of Arizona, Maricopa County, on February 1, 1991. Under the terms of that agreement, "Adamson agrees to cooperate fully with the State in the investigation and prosecution of the June 1976 murder of Donald Bolles, and in the investigation and prosecution of any crimes or cases arising out of or connected with the murder." This principally involves the murder trials of Robinson and Dunlap, who allegedly hired Adamson to commit the murder of Bolles, for which Adamson was convicted and sentenced to death in 1980. After completion of the murder trials of Robinson and Dunlap, Adamson will tender to the State trial court a guilty plea to second degree murder and will request "that the court reactivate the January 15, 1977 plea agreement." The State agrees that "the State will, if Adamson has at all times provided complete and truthful testimony and otherwise complied with the terms of this agreement, join in that request and in Adamson's motion." The agreement further provides that if Adamson violates the terms of the agreement,

---

**1.** In denying the State's petition, four justices voted to deny certiorari, three justices voted to grant certiorari, and the remaining two justices took no part in deciding whether to grant review.

the first degree murder conviction and death sentence will be automatically reinstated.

On the basis of this Stipulation and Cooperation Agreement, the State has filed a motion to vacate the judgment of our court and to dismiss the appeal as moot. We conclude, however, that the case is not moot because all of the conditions precedent to the vacation of Adamson's death sentence have not been fulfilled.

■ A habeas corpus petition is not moot "until it can be said with certainty" that the state court judgment in question will not affect the petitioner's liberty. *Mancusi v. Stubbs*, 408 U.S. 204, 206, 92 S.Ct. 2308, 2309, 33 L.Ed.2d 293 (1972). So long as a habeas petitioner remains confined under a sentence from which he has not been unconditionally released, he can validly contest it in federal court. *Maleng v. Cook*, 490 U.S. 488, 491–92, 109 S.Ct. 1923, 1925–26, 104 L.Ed.2d 540 (1989).

In the situation before us, the death sentence has not been vacated. It may be vacated only if the conditions of the Stipulation and Cooperation Agreement are fulfilled. Otherwise, a death sentence that we have held to have been unconstitutionally imposed will be carried out. The case, therefore, is not moot at this time. The case would become moot only if Adamson fulfills the terms of the Stipulation and Cooperation Agreement, approved February 1, 1991, to the satisfaction of the State, and the Superior Court enters an order, on the joint application of the parties, setting aside the death sentence and reinstating the January 15, 1977 plea agreement.

## IV.

### Procedural Posture

The procedural posture of this matter deserves clarification. The State submitted for filing a Motion for Rehearing and Suggestion for Rehearing Before the Full *En Banc* Court and also submitted a motion to circulate that petition to the full court. The rules of appellate procedure also require that a petition for rehearing "be filed within 14 days after entry of judgment,"

and that a suggestion for a rehearing *en banc* be made on the same day. Fed. R.App.P. 40(a); 35(c). A party's suggestion for a rehearing before the full court must also be filed within 14 days of the filing of an *en banc* opinion. 9th Cir. Gen'l Order 5.8(a). Thus, considered as a petition for rehearing, the petition is untimely.

■ The limited *en banc* court determined to treat the motion as a motion to stay the issuance of the mandate, and called for additional briefing and oral argument on that question. Until the limited *en banc* court rules on the issue of whether to stay the issuance of the mandate, a petition for rehearing before the full court is premature.

## V.

### Stay of Mandate

■ Fed.R.App.P. 41(b) permits a stay of the issuance of a mandate granted to a party who has filed a petition for writ of certiorari in the Supreme Court to "continue until final disposition by the Supreme Court." Rule 41(b) also requires that, "[u]pon the filing of a copy of an order of the Supreme Court denying the petition for writ of certiorari, *the mandate shall issue immediately.*" (Emphasis added).

In this case, due to a clerical error, the mandate was not issued on July 2, 1990, the day the Supreme Court's denial of the State's petition for certiorari was filed in this court, and the mandate had not yet issued on July 10, 1990, when the State submitted its petition for rehearing and suggestion for rehearing before the full *en banc* court. As a result, the State urged us to stay issuance of the mandate and retain jurisdiction to reconsider our prior decision in light of the Supreme Court's recent decisions in *Walton v. Arizona*, — U.S. ——, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), *Lewis v. Jeffers*, — U.S. ——, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990), and *Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). The essential question presented for our consideration is whether we should retain jurisdiction to reconsider our prior *en banc* decisions in

light of those cases, after the Supreme Court has denied certiorari, but before the mandate has issued from our court.

The State relies on the three-judge panel decision in *Bryant v. Ford*, 886 F.2d 1526 (9th Cir.1989), *cert. denied*, 493 U.S. 1076, 110 S.Ct. 1126, 107 L.Ed.2d 1033 (1990), in which we did stay the mandate following the Supreme Court's denial of certiorari. We held that because of Fed.R.App.P. 41(b)'s express direction that the mandate "shall issue immediately upon the denial of certiorari," the mandate could only be stayed upon the same exceptional circumstances justifying a recall of the mandate. We noted our three-judge panel decision in *Zipfel v. Halliburton Co.*, 861 F.2d 565 (9th Cir.), *cert. denied*, 486 U.S. 1054, 108 S.Ct. 2819, 100 L.Ed.2d 921 (1988), in which we upheld the power to recall the mandate, but only in exceptional circumstances. We there held that the recall was justified because of "an overpowering sense of fairness and a firm belief that this is the exceptional case requiring recall of the mandate in order to prevent an injustice." *Id.* at 567–68. In *Zipfel*, we initially reversed a district court injunction that would have governed the course of future litigation by foreign seamen in Texas state courts. Four months later, the Supreme Court, in a very similar case involving future litigation in Texas courts, *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 108 S.Ct. 1684, 100 L.Ed.2d 127 (1988), held that the entry of a limited injunction was proper. The application of *Chick Kam Choo* would require a contrary result from that of our initial decision in *Zipfel*. Thus, by compulsion of the federal courts, the Texas state courts would be required to apply different rules in essentially identical cases.

In *Bryant*, the exceptional circumstance held to warrant a stay of the mandate was Congress's enactment of an amendment to the removal jurisdiction statute, while the case was pending on certiorari, providing that the inclusion of "doe defendants" in a civil complaint did not defeat diversity jurisdiction. *See Bryant*, 886 F.2d at 1527, 1529–30. Congress's action was in direct conflict with our prior *en banc* decision in *Bryant*, which had held that the inclusion of "doe defendants" defeated diversity jurisdiction. *Bryant v. Ford Motor Co.*, 844 F.2d 602 (9th Cir.1987) (*en banc*). The *en banc* court then remanded the case to the three-judge panel which held that "Congress's action while this case was pending on certiorari justifies a stay of the mandate, and we choose to exercise our discretion to do just that...." *Bryant*, 886 F.2d at 1530. The result of the previous *en banc* decision in *Bryant* was to deny subject matter jurisdiction over a case that Congress had specifically declared should come within federal court jurisdiction, thus denying the removing party its day in federal court.

In *Bryant*, as in *Zipfel*, the application of the change in the law required a significant change in the result for the parties. In the *Adamson* case before us, the application of the subsequent Supreme Court authority does not require a change in the result of our *en banc* decision. The Supreme Court's decisions in *Walton* and *Jeffers* overrule in some respects our *en banc* rulings in *Adamson* on the issues regarding the overall constitutionality of Arizona's statute for sentencing in capital cases. However, there are two bases for our decision that were not affected by *Walton* and *Jeffers*, those being (1) judicial arbitrariness in violation of the Eighth and Fourteenth Amendments, and (2) prosecutorial vindictiveness. The judicial arbitrariness determination overrides the determination of prosecutorial vindictiveness because the former triggers complete relief, whereas the latter only requires a remand for an evidentiary hearing. *Adamson*, 865 F.2d at 1044. We stated,

In Part II, we affirm the district court on the issue of judicial vindictiveness. We reverse the district court with regard to the issue of prosecutorial vindictiveness and remand with instructions to conduct an evidentiary hearing on that issue.

In Part III, we reverse the district court and hold that the death penalty was imposed arbitrarily, in violation of the Eighth and Fourteenth Amendments.

We remand to the district court with instructions to grant the writ of habeas corpus unless the State, within a reasonable time, resentences Adamson to a sentence other than death.

*Id.*

The State contends that the Supreme Court's decision in *Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989), undermines the judicial arbitrariness ground. In that non-capital case the Supreme Court held that the fact that a sentencing judge increased the sentence after a guilty plea was set aside did not raise a presumption of judicial vindictiveness. This comports with our determination in this case that there was insufficient evidence of judicial vindictiveness. However, it does not affect the judicial arbitrariness ground. The *Smith* case involved no issue of judicial arbitrariness under the Eighth and Fourteenth Amendments, which was raised in this case because of the fact that the death penalty was involved. Because no Supreme Court case issued since our opinion in *Adamson III* leads us to modify our holding regarding "judicial arbitrariness," we need not decide whether *Smith* or any other recent case undermines our conclusion regarding "prosecutorial vindictiveness."

■ In this *en banc* decision, we need not determine whether the standard used in *Zipfel* and *Bryant* to recall or stay the mandate is sufficiently stringent to determine its applicability to criminal cases. Even under the threshold specified in those cases, the stay of the mandate for reconsideration by the limited *en banc* court is not justified. The subsequent Supreme Court authority does not dictate a change in result. The judgment would remain the same. It is apparent that the Supreme Court authority on the Arizona statutory issues, to the extent it is inconsistent with our holdings, must govern future cases. Panels of this court are not bound by decisions of prior panels or *en banc* decisions that are clearly inconsistent with subsequent Supreme Court decisions. *See Sheehan v. United States*, 896 F.2d 1168, 1172

n. 7 (9th Cir.) (collecting cases), *amended by* 917 F.2d 424 (9th Cir.1990).

District courts and appellate panels are fully capable of applying the Supreme Court precedent and distinguishing it from circuit court precedent that is inconsistent. This is a common occurrence in the federal judicial system when the Supreme Court overrules circuit court precedent. Several panels of our court have already done so in applying our *en banc* decision in this case. *See, e.g., Nichols v. McCormick*, 929 F.2d 507 (9th Cir.1991); *Richmond v. Lewis*, 948 F.2d 1473 (9th Cir. amended Jan. 14, 1992), cert. filed Jan. 15, 1992; *Taylor v. Kincheloe*, 920 F.2d 599 (9th Cir.1990); *Smith v. McCormick*, 914 F.2d 1153, 1169–70 (9th Cir.1990).

## VI.

### Teague Contention

The State urges us for the first time in its brief on this motion that exceptional circumstances exist to allow staying the mandate and reconsideration of our *en banc* decision because of the nonretroactivity principles announced in *Teague v. Lane*, 489 U.S. 288, 295–96, 109 S.Ct. 1060, 1066–67, 103 L.Ed.2d 334 (1989), and first applied to death penalty cases in *Penry v. Lynaugh*, 492 U.S. 302, 314–15, 109 S.Ct. 2934, 2944–45, 106 L.Ed.2d 256 (1989). The State maintains that the *en banc* rulings on prosecutorial vindictiveness and judicial arbitrariness are "new rules" within the ambit of *Teague* and *Penry*. The *Teague* issue, decided shortly after our denial of the State's first petition for rehearing, was not even raised by the State in its petition for certiorari before the Supreme Court. This contention is not appropriate to be raised at this late stage as an exceptional circumstance to justify a stay of the mandate to consider that issue.

## VII.

### Conclusion

We conclude that, because of the requirements of Fed.R.App.P. 41(b), the mandate should issue immediately. Any stay of mandate would have to be justified upon

the same grounds as would justify a recall of mandate. In this case, the result of the application of subsequent Supreme Court authority would not change the result of our *en banc* opinion. Any reconsideration, based upon that subsequent Supreme Court authority, would amount to no more than an advisory opinion. The application of the subsequent Supreme Court authority is best made by the district courts and future appellate panels on a case-by-case basis.

THE MANDATE SHALL ISSUE IMMEDIATELY.

BRUNETTI, Circuit Judge, with whom Judges ALARCON and BEEZER join, dissenting:

The unique procedural history of this case deprived the state from fully challenging the correctness of our prior en banc decision. *Adamson v. Ricketts*, 865 F.2d 1011 (9th Cir.1988). I continue to believe that that decision is incorrect and clearly inconsistent with the Supreme Court's direction. Therefore, I believe there are exceptional circumstances in this case that justify recalling our mandate to allow the full court to review our approach to this case. Thus, I respectfully dissent.

## I.

### *Case History*

I agree with the majority that an understanding of the procedural posture of this matter is necessary to consider the question before us. This is the third time our en banc court has heard an issue stemming from John Adamson's conviction for the 1976 murder of Donald Bolles, an investigative reporter. The first en banc decision reversed a three-judge panel and would have vacated Adamson's murder conviction on double jeopardy grounds. *Adamson v. Ricketts*, 789 F.2d 722, 730 (9th Cir.1986) (en banc). I dissented because of my belief that the en banc court misapplied constitutional law and Supreme Court precedent. *See id.* 735–47 (Brunetti, J., dissenting). The Supreme Court squarely reversed the Ninth Circuit and reinstated Adamson's

sentence. *Ricketts v. Adamson*, 483 U.S. 1, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987).

When the en banc court resumed control of the case on remand it again reversed Adamson's death sentence and remanded for resentencing. *Adamson v. Ricketts*, 865 F.2d 1011 (9th Cir.1988) (en banc). Once again I dissented from the opinion because of difficulties with the majority's legal analysis. 865 F.2d at 1045–69 (Brunetti, J., dissenting). Undeterred by clear Supreme Court precedent, the majority relied on four theories to vacate Adamson's death sentence and on one theory remanded to the district court for an evidentiary hearing. 865 F.2d at 1045. Three of the majority's reasons for vacating the death sentence involved the alleged unconstitutionality of Arizona's death sentence statutes. The majority's reasoning on these three issues was firmly rejected by the Supreme Court in *Lewis v. Jeffers*, —— U.S. ——, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990), and *Walton v. Arizona*, —— U.S. ——, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990). The other two underpinnings of the en banc panel's decision, judicial arbitrariness and prosecutorial vindictiveness, were undercut by a third Supreme Court case, *Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989).

After our en banc decision, Arizona was faced with a choice: challenge our decision (in particular, our ruling on the constitutionality of the Arizona statutory scheme) through a request for a rehearing before the full court of the Ninth Circuit or petition the Supreme Court for a writ of certiorari. Arizona made the reasonable determination that our cases might be contrary to Supreme Court precedent and that the Court would grant certiorari to consider these important issues. This is exactly what happened in *Lewis* and *Walton*.

But something unexpected happened in *Adamson*. Two Justices, O'Connor and Kennedy, did not take part in the consideration of the petition for writ of certiorari. *Lewis v. Adamson*, —— U.S. ——, 110 S.Ct. 3287, 111 L.Ed.2d 795 (1990). Although three of the Justices considering the petition specifically stated that they "would

**622**

grant the petition for a writ of certiorari, vacate the judgment and remand[ ] the case to the United States Court of Appeals for the Ninth Circuit for further consideration in light of" *Lewis, Walton,* and *Smith,* Arizona failed to garner the four votes necessary for the petition to be granted. *Id.* Considering the Court's posture in *Lewis, Walton,* and *Smith,* the failure to grant the petition appears to have resulted solely from the absence of the participation of Justices O'Connor and Kennedy in the process. Consequently, there is an unfortunate and irreconcilable conflict between *Adamson* and *Lewis, Walton,* and *Smith,* which would not exist if the analysis in my dissent prevailed.

## II.

### Exceptional Circumstances

This unusual circumstance justifies recalling our mandate and reconsidering our decision. The judicial power is vested in the Supreme Court first and we are an inferior court bound to follow its dictates. U.S. Const., art. III, § 1. The actions of the Court following our *Adamson* en banc decisions should cause us to question whether we correctly applied the law. We have an opportunity to do so, and at least three of the Justices believe it is necessary. The rare posture of this case is exceptional enough for us to take the severe step of recalling our mandate.

In conclusion, I will also note that our holding relating to judicial arbitrariness, while currently the law of our circuit, must be read in light of the Supreme Court's subsequent cases.

I would order a recall of our mandate to reconsider our second en banc decision.