**Stephen Wayne ANDERSON, Petitioner–Appellant,**

v.

**Arthur CALDERON, Warden, Respondent–Appellee.**

No. 98–99024.

United States Court of Appeals, Ninth Circuit.

Filed Dec. 21, 2001

Before: TROTT, FERNANDEZ, and McKEOWN, Circuit Judges.

Order; Dissent by Judge Reinhardt

## ORDER

Petitioner Anderson has filed with this Court a series of emergency motions asking to reopen this case and to rehear en banc certain claims, all of which relate to our recent opinion in *Mayfield v. Woodford,* 270 F.3d 915 (9th Cir.2001). Anderson asserts that our en banc court's adverse treatment in *Mayfield* of the performance of Anderson's trial attorney, Donald Ames, casts doubt on our November 17, 2000, decision in this case regarding whether Mr. Ames provided ineffective assistance of counsel to petitioner Anderson. We concluded that Mr. Ames's and his co-counsel's representation of Mr. Anderson did not violate the Sixth Amendment. We then considered a petition to rehear the matter en banc, and the Court voted not to rehear it.

On June 6, 2001, we granted Anderson's motion to stay the mandate until final disposition of his petition for a writ of certiorari to the United States Supreme Court. On November 13, 2001, the Supreme Court issued its order denying Anderson's petition. *See Anderson v. Calderon,* —— U.S. ——, 122 S.Ct. 580, 151 L.Ed.2d 451 (2001). We received formal notification from the Supreme Court of this denial on November 19, 2001.

The panel has voted to deny the emergency renewed petition for rehearing and to deny the petition for rehearing en banc.

The full court was advised of the petition for rehearing en banc. An active judge requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. *See* Fed. R.App. P. 35(b).

The emergency renewed petitions for rehearing and for rehearing en banc are DENIED.

The mandate previously withheld shall issue forthwith. *See* Fed. R.App. P. 41(d)(2)(D). No further matters remain pending before this Court.

REINHARDT, Circuit Judge, with whom Circuit Judges PREGERSON, HAWKINS, TASHIMA, W. FLETCHER, and PAEZ join dissenting:

At a time when much of the civilized world is questioning the fairness of our application of the death penalty, and a vigorous national debate is occurring over whether all persons are entitled to a fair trial, it is regrettable that this court refuses to consider en banc the case of an individual sentenced to death by the state of California after being represented by a

court-appointed attorney whom we have now twice deemed constitutionally ineffective in capital cases—an attorney who has demonstrated a willingness to lie to the court and to betray the interests of his capital clients. I cannot join my colleagues in their decision to permit the state to proceed with the execution of an individual whose death sentence may well have been imposed, not because of the crime that he committed, but because of the incompetence of an attorney with little integrity and a pattern of ineffective performance in capital cases.

When Stephen Anderson petitioned this court for habeas relief, he alleged that his attorney, Donald S. Ames, provided ineffective representation by, among other things, failing even to meet with him before the trial began, conceding his guilt in his closing argument when he asked the jury to convict him of first-degree murder (but not felony murder), and failing to investigate and present favorable evidence on his behalf at the penalty phase. A panel of this court, while recognizing that we had already deemed Ames's representation constitutionally ineffective in a separate capital case, *see Wade v. Calderon*, 29 F.3d 1312 (9th Cir.1994), trustingly relied on various representations that Ames made in evidentiary hearings about the investigative steps that he took and the trial strategies that he employed, and de-

nied Anderson's claim for ineffective assistance of counsel. *See Anderson v. Calderon*, 232 F.3d 1053, 1086–93 (9th Cir.2000).

After the panel decision was published, we decided *Mayfield v. Woodford*, 270 F.3d 915 (9th Cir.) (en banc).[1] In our *Mayfield* en banc decision, we not only held (for the second time) that Ames had acted incompetently in a capital case, but also related facts that made it clear that Ames had been deceptive, untrustworthy, and disloyal to his capital clients. Specifically, in *Mayfield*, we reported that there were "six declarations indicating that Ames was racially prejudiced" and that two of those declarations "related racial epithets that Ames used in reference to minority clients." *Id.* at 924.[2] Judge Graber's dissent[3] then graphically described these statements. She reported that Ames stated that he "did not care" what happened to one capital client and that another "deserves to fry." *Id.* at 933 (Graber, J., dissenting). By walking into court and purporting to provide zealous representation while simultaneously denigrating his clients and admitting that he did not care what happened to them, Ames violated his duty of loyalty to those clients. As Judge Graber wrote, "Defense counsel in this case abandoned his duty of loyalty to his client...." *Id.* at 927. She also wrote, damningly, that "Ames did much

---

1. In *Mayfield,* as in *Anderson,* the three-judge panel failed to find that Ames had been constitutionally ineffective in his representation of a capital client at the penalty phase. *Mayfield v. Calderon,* 229 F.3d 895 (9th Cir.2000). This court took Mayfield's case en banc and held that Mayfield was deprived of his constitutional rights. We therefore vacated his death sentence. Now, we refuse to afford the same en banc procedure to Anderson although, if we did, we might well reach the same result and vacate his death sentence. Instead, Anderson is scheduled to be executed within the next few weeks.

2. The en banc majority did not dispute the accuracy of these statements, holding only that they were insufficient to establish an actual conflict of interest under *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). Judge Graber's dissent leaves no doubt as to the validity of the declarants' charges.

3. Although labeled a dissent, Judge Graber did not disagree with the majority's determination that, in light of Ames's ineffective performance, Mayfield's execution would be unconstitutional. *See Mayfield,* at 927.

more than serve his client indifferently; he actively served the interests of the prosecution." *Id.* at 927.

The facts related in *Mayfield* made it clear that Ames was deceptive and had made material misrepresentations to the court. In discussing why we concluded that Ames was incompetent, we stated that he billed only 40 hours in preparation for the guilt and penalty phases and noted that "[h]e claims to have spent more than 200 hours on the case"—a claim that the state court judge found "inherently implausible." *Id.* at 927 n. 12. This shows not only that Ames was willing to lie to the court, but also that he would do so regarding the extent of his effort (or, to be more precise, lack of effort) on behalf of a capital client.

The fact that Ames deceived the courts into believing that he was a zealous advocate while simultaneously violating his duty of loyalty to capital clients, coupled with the other facts we related in *Mayfield*, significantly undermines Ames's credibility. Yet, the *Anderson* panel opinion relied heavily on Ames's representations and on that credibility.[4] Specifically, the opinion noted that "there is nothing to suggest that Ames's credibility is susceptible to legitimate attack." *Anderson*, 232 F.3d at 1086. After *Mayfield*, however, that is simply not true.

Having now *twice* determined that Ames was constitutionally ineffective in representing capital clients and having spared two of his clients from unconstitutional executions ordered as a result of his incompetent representation, we should not now permit an execution to proceed in the case of still another capital defendant whose life the state has placed in Ames's hands, at least not without reviewing the case en banc. It is not everyday that this court is presented with conclusive evidence showing that a court-appointed capital attorney has lied to the court and to his own clients about the nature and extent of his representation. Nor do we often encounter a capital attorney who has described his clients using the most odious of racial epithets and has stated that one client "deserves to fry" and that he does not "care what happens" to another.

As long as the death penalty remains an acceptable form of punishment in our criminal justice system, we must at least ensure that the process we afford to individuals whose lives we propose to take is both fair and consistent with fundamental constitutional values. If the courts appoint incompetent counsel to handle a capital case, we should not then compound that judicial error by permitting the state to execute the ill-represented defendant.

4. At numerous points in the *Anderson* opinion, the panel discussed its reliance on Ames's credibility. For example, Anderson claimed that Ames was ineffective in failing to meet with him before trial and failing to consult with him about his representation. The panel rejected this argument, relied on Ames's assertions, and stated that "a review of Ames's testimony at the evidentiary hearing makes clear that Ames did not fail to discuss the case with Anderson at any point in the representation." 232 F.3d at 1086.

Anderson also claimed that Ames was ineffective because he inexplicably conceded guilt in closing arguments and asked the jury to find Anderson guilty of first-degree murder. The panel disagreed after crediting Ames's assertions at the evidentiary hearing that his statements during closing arguments were part of a trial strategy. *Id.* at 1087.

Further, Ames claimed that he did not call witnesses at the penalty phase because Anderson forbade it. However, Anderson claims (and this claim is supported by Ames's own investigative notes) that he gave Ames the names of numerous potential penalty phase witnesses and told Ames only that he did not want him to call his father as a witness. Again, however, the panel relied on Ames's representations—this time, that Anderson told him not to call the witnesses. *Id.* at 1093.

The system has now failed doubly in Stephen Anderson's case.[5] I respectfully dissent from the court's failure to take this matter en banc.[6]

**5.** In addition to the errors discussed above, there was at least one other significant constitutional error in Anderson's case. As Judge McKeown noted in her dissent, Anderson was held without being arraigned and was questioned for 76 hours in violation of *Riverside v. McLaughlin*, 500 U.S. 44, 56, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). In Judge McKeown's view (as well as in the view of others on this court), this constitutional violation independently required the reversal of Anderson's death sentence. *See Anderson*, 232 F.3d at 1100–1107 (McKeown, J., dissenting).

**6.** The procedural posture of this case does not affect my analysis. A motion to stay the mandate is timely filed so long as it is filed prior to the issuance of the mandate (even if after the Supreme Court's denial of certiorari). *See, e.g., Bryant v. Ford Motor Co.*, 886 F.2d 1526 (9th Cir. 1989); *see also Adamson v. Lewis*, 955 F.2d 614, 619 (9th Cir.1992). Here, the mandate had not issued and the motion to stay was sought in order to permit this court to consider en banc Anderson's petition for rehearing on the basis of *Mayfield*. Because this is an exceptional case in which a stay of the mandate is required in order to prevent an injustice and because the panel has voted to deny a stay, I respectfully dissent from this court's refusal to consider the stay request en banc.